WALKER et al. v. BROWN et al.

(Circuit Court of Appeals, Eighth Circuit. September 10, 1894.)

No. 375.

1. LIEN—WHAT CONSTITUTES.

An agreement made with a prospective creditor of a firm, by one who has loaned bonds to it, that such bonds, "or the value thereof," shall not be returned to him until any money owing to such creditor shall be paid, and that the bonds, "or the value thereof," shall remain at the risk of the firm's business, so far as any claim of such creditor is concerned, does not create a lien on the bonds themselves, as the owner may take them back at any time by paying their value to the firm. 58 Fed. 23, affirmed.

2. BREACH OF CONTRACT—REMEDY.

Defendants' decedent agreed with plaintiffs that certain bonds loaned by him to a firm seeking credit from plaintiffs should not be returned to him

until any money owing plaintiffs should be paid, and that the bonds, "or the value thereof," should remain at the risk of such firm's business, so far as any claim of plaintiffs was concerned. The bonds were afterwards returned to decedent without consideration. *Held,* that plaintiffs' remedy was by action at law for breach of contract, rather than in equity to subject the bonds, as no lien on the bonds was created. 58 Fed. 23, affirmed.

3. EQUITY—SUIT AGAINST ADMINISTRATOR.

Suit cannot be maintained on the equity side of a federal court to enforce a purely legal demand merely because the demand is against the estate of a deceased person. 58 Fed. 23, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

In Equity. Bill by James H. Walker, Columbus R. Cummings, and William B. Howard against Anna L. Brown, Willis S. Brown, and Edward L. Marsh, administrators of the estate of Tallmadge E. Brown, deceased. There was a decree dismissing the bill (58 Fed. 23), and complainants appeal.

This is a bill which was preferred by the appellants, composing the firm of James H. Walker & Co., of the city of Chicago, against the appellees, as administratrix and administrators, respectively, of the estate of Tallmadge E. Brown, deceased, to enforce an alleged equitable lien upon certain bonds of the city of Memphis, Tenn., aggregating in amount the sum of $15,000. The bill charged that prior to May 9, 1889, the deceased, Tallmadge E. Brown, was a stockholder of the Lloyd Mercantile Company, he having theretofore transferred the bonds now in controversy to said corporation in payment for stock therein by him purchased; that on the 1st day of August, 1889, Brown became anxious to withdraw his capital from the Lloyd Mercantile Company, whereupon a partnership was formed by J. Collins Lloyd and Copley Lloyd, under the name of Lloyd & Co., which latter firm bought all of the assets of the Lloyd Mercantile Company, except the Memphis bonds aforesaid, which were at that time surrendered to said Brown, and also assumed to pay all of its debts, including a debt in the sum of $1,524, which was then due from the Lloyd Mercantile Company to the appellants. The bill further charged: That on the 20th day of September, 1889, the firm of Lloyd & Co. applied to the firm of James H. Walker & Co. to make a purchase of merchandise on credit, whereupon said Tallmadge E. Brown, for the purpose of inducing the appellants to extend such credit, executed the following agreement, in the form of a letter, to wit:

"Chicago, September 21, 1889.

"Messrs. James H. Walker & Co., Chicago, Ill.—Gentlemen: I beg to advise you that the loan of fifteen thousand dollars, Memphis bonds, made by me to Mr. J. C. Lloyd for the use of Messrs. Lloyd and Company, Ellensburg, Wash. Ter., is with the understanding that any indebtedness they may be owing you at any time shall be paid before the return to me of these bonds, or the value thereof, or that these bonds, or the value thereof, are at the risk of the business of Lloyd and Company, so far as any claim you may have against said Lloyd and Company is concerned.

"Yours, truly, T. E. Brown."

That, in reliance on the agreement evidenced by the aforesaid letter, Walker & Co. thereafter extended credit to Lloyd & Co. in the sum of about $13,000, between August 20 and December 11, 1889. The bill further alleged in substance that Lloyd & Co. failed on December 25, 1889, owing Walker & Co. at the time about $13,000, no part of which has yet been paid; that prior to said failure Lloyd & Co. surrendered and returned to said Brown, without consideration, the Memphis bonds aforesaid; and that on the death of Brown, in the month of May, 1891, they passed into the custody of his administrators, as assets of his estate.

The answer of the defendants denied, among other things, that Tallmadge E. Brown, in his lifetime, was a stockholder of the Lloyd Mercantile Company, or that he had transferred the Memphis bonds in question to that corporation

in payment for stock, as was alleged in the bill, or that he was in any wise responsible for any of the debts of the mercantile company when it ceased to do business, and when the firm of Lloyd & Co. was formed. It averred in substance that prior to the 9th day of May, 1889, Brown loaned the bonds now in controversy to the Lloyd Mercantile Company to enable it to raise money, and that said company, prior to May 9, 1889, pledged said bonds to secure a debt which it then owed in the city of Chicago; that the bonds remained pledged to secure said indebtedness of the mercantile company on the 21st day of September, 1889, when the aforesaid letter was written by Brown to James H. Walker & Co.; that Lloyd & Co. failed to pay this indebtedness when they were called upon to pay it, and that Brown paid the same in the month of November, 1889, and received said bonds from the pledgee; and that he afterwards, before his death, made a valid gift and delivery of the bonds to his wife, Anna L. Brown, one of the appellees, who was the owner of the same in her own right when the bill was filed. On the filing of the answer, which disclosed the fact that Anna L. Brown had become the owner of the bonds by a gift made in the lifetime of her husband, the appellants amended their bill of complaint by making the said Anna L. Brown a defendant in her own right.

The circuit court appears to have dismissed the appellants' bill of complaint upon the ground that the aforesaid agreement of September 21, 1889, did not create an equitable lien upon the bonds, and that no other matters were stated in the bill or proven on the trial which rendered the case one of equitable cognizance. Vide Walker v. Brown, 58 Fed. 23.

Henry S. Robbins, for appellants.

N. T. Guernsey, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first question presented for consideration by this court is whether the letter of T. E. Brown to James H. Walker & Co., of date September 21, 1889, had the effect of creating an equitable lien upon the Memphis bonds therein referred to, in favor of James H. Walker & Co., which lien a court of chancery will enforce. In his work on Equity Jurisprudence, Mr. Pomeroy says, and the authorities cited by him undoubtedly support the proposition—

"That every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt, or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers, with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property." 3 Pom. Eq. Jur. § 1235, and cases there cited.

The question arises, therefore, whether there is to be found in the letter in question, viewed in connection with the circumstances under which it was written, an expression of an intention on the part of T. E. Brown, now deceased, or a promise on his part, to make the particular bonds referred to in the letter a security for whatever credit the firm of James H. Walker & Co. might thereafter extend to Lloyd & Co. This letter appears to have been written by an agent of James H. Walker & Co. at the city of Chicago, and to have been sent to the deceased at his residence in the city of Des Moines, Iowa, where it was signed by him, and returned

through the mail to the appellants. The record shows in substance that Lloyd & Co. applied to the appellants to purchase certain merchandise on credit, and, at the time of such application, made a statement of the firm's assets and liabilities. At this interview the fact was disclosed to the appellants, and they appear to have been aware of the fact before the disclosure was made, that Lloyd & Co. were indebted to T. E. Brown in the sum of $15,000 for bonds of the city of Memphis which he had loaned to the firm, and which were then hypothecated to the Union National Bank of Chicago to secure a loan for that amount, which the firm of Lloyd & Co. was obligated to pay. The appellants refused to extend credit to Lloyd & Co. unless T. E. Brown, the owner of the bonds, would sign an agreement with respect to the return and surrender of the same which was satisfactory to the appellants. Thereupon, at the suggestion of Lloyd & Co., Mr. William A. Mason, in behalf of the firm of J. H. Walker & Co., dictated the aforesaid letter, as containing such an agreement as would be satisfactory to his principals, and would induce them to extend credit to Lloyd & Co. With reference to his motive in formulating the letter which was subsequently signed by the deceased, Mr. Moore testified, in behalf of the appellants, as follows:

"We understood that Mr. Brown was a partner in the Lloyd Mercantile Company, or held stock in the Lloyd Mercantile Company, and that in making this change from the Lloyd Mercantile Company to Lloyd & Co. he had become a creditor, instead of a stockholder, and we insisted that he must take the same position that he had before, so far as we were concerned; that the capital of Lloyd & Co. must be fifty thousand dollars, or about that, the same as of the Lloyd Mercantile Company."

We think that the letter of September 21, 1889, when considered by itself, without the aid of parol testimony, is fairly susceptible of but one interpretation, which is well stated in the foregoing extract from the testimony of the person by whom the letter was drafted. The appellants were advised that Brown had loaned Lloyd & Co. the sum of $15,000 in Memphis bonds, which was being used by the firm as a part of its capital. They were willing to extend credit to the firm to a certain amount, if Brown would agree that the money thus loaned should not be withdrawn until the indebtedness of Lloyd & Co. to the appellants was paid, and that until such time the loaned capital should remain at the risk of the business of Lloyd & Co. The only undertaking on the part of the defendants' intestate that can fairly be extracted from the letter is a promise on his part that the capital loaned to Lloyd & Co. should not be withdrawn until the appellants' debt was paid. It is manifest, however, that the decedent did not intend to give the appellants a lien upon the Memphis bonds for the payment of such indebtedness as they might allow Lloyd & Co. to contract, and that he did not even intend to obligate himself to leave said bonds in the possession of Lloyd & Co. until such indebtedness was paid and extinguished, for his promise was clearly in the alternative,—that said "bonds, or the value thereof, should be at the risk of the business of Lloyd & Company," so far as the appellants' claim was concerned. It will hardly admit of a doubt, we think, that within the contemplation of both

parties to the agreement of September 21, 1889, the deceased had the right at any time to withdraw the Memphis bonds from the custody of Lloyd & Co., provided he left other securities of equal value, either money or property, in the hands of that firm, subject to the vicissitudes of its business.    Indeed, the bill of complaint appears to have been drawn upon the theory that the deceased had the right to withdraw said bonds on the condition last stated, and that he had no intention of creating a lien thereon, for the bill contains the following allegation:

"Your orators were also unwilling to extend any credit to said Lloyd & Co. after and so long as said fifteen thousand dollars of Memphis bonds were withdrawn from said assets, and redelivered to said Brown as and for his own property; and thereupon the said Brown, for the purpose of inducing your orators to permit the withdrawal by said Brown of said bonds, and to extend to Lloyd & Co. such further credit in the sale of merchandise as said Lloyd & Co. might desire, promised and agreed in a writing duly signed by said Brown with your orators on the 21st day of September, 1889, that, in consideration of your orators' extending further credit to said Lloyd & Co. as aforesaid, any indebtedness that said Lloyd & Co. should be owing to your orators at any time should be paid before there should be returned to him, said Brown, the said Memphis bonds so loaned to said Lloyd as aforesaid, or the value thereof."

We must accordingly concur in the view which appears to have been taken by the circuit court,—that the testimony failed to establish the existence of a lien, either legal or equitable, so far as the bonds now in controversy are concerned, and that at most it only tended to show that the deceased had violated his agreement not to withdraw the amount of capital which he had loaned to Lloyd & Co. until the debt of the appellants was paid.    We must also concur in the further view of the circuit court that a court of law is competent to afford adequate relief for a breach of contract of that nature.    The result is that the bill was properly dismissed, unless it be true that even in the absence of a lien the appellants had the right to go into a court of equity for an assessment of the damages which they had sustained.

This brings us to the consideration of the second proposition maintained by counsel for the appellants,—that even in the absence of a lien, as charged in the bill, the complainants below had the right to sue in equity for the enforcement of their demand.    The contention in this respect goes to the extent of asserting that the holder of a purely legal demand against the estate of a deceased person may sue in equity in the United States circuit court for the proper district, for the establishment of his claim, if he happens to be a nonresident, and that in aid of such proceeding the court may take to itself the administration of the decedent's estate.    The argument by which this conclusion is reached is very brief, and is to the following effect: It is said that the equity jurisdiction vested in the federal courts is such as was exercised by the high court of chancery in England at the adoption of the federal constitution, and that the English courts of chancery had jurisdiction of bills to enforce the due administration of the estates of deceased persons.    The proposition, if tenable, is certainly startling,—that, notwithstanding the elaborate code of laws now in force in most of the states of this Union regulating the subject of administration, the federal courts, as

courts of equity, may nevertheless administer the estates of deceased persons at the instance of a nonresident creditor. While there are some expressions to be found in adjudged cases which perhaps give color to such an assertion, yet we think that it will be found on a careful view of the subject, and the circumstances under which such utterances have been made, that there is in fact no substantial ground on which to rest the exercise of the large jurisdiction above claimed. In the case of Pratt v. Northam, 5 Mason, 95, Fed. Cas. No. 11,376, one of the earliest cases touching this subject which is to be found in the federal reports, Judge Story held that the courts of the United States, as courts of equity, "possess jurisdiction to maintain suits in favor of legatees and distributees for their portions of the estate of the deceased, notwithstanding there may be by local jurisprudence a remedy at law on the administration bond in favor of the party." The facts disclosed in this latter case made it one of equitable cognizance on the ground of fraud. The proceeding was in substance a bill in equity to avoid a final judgment of a probate court settling the accounts of an administrator, which judgment had been obtained through the fraud of the administrator. Suits of that nature may doubtless be maintained in the national courts. In the case of Hagan v. Walker, 14 How. 29, 33, the following statement is found: "That a single creditor may maintain a bill against an administrator of a deceased debtor for a discovery of assets, and the payment of his debt, there can be no doubt." But this was said with reference to a case of which a court of equity, state or federal, clearly had jurisdiction on well-established equitable grounds, it being a case in which a judgment creditor of the deceased sought to reach property in the hands of a third party that had been conveyed to him by the deceased, in his lifetime, with intent to defraud his creditors. The case of Union Bank v. Jolly's Adm'rs, 18 How. 503, is also referred to, and apparently with great confidence, in support of the appellants' contention. That was a case, however, in which the complainant had obtained a judgment against the administrators of Jolly in the federal court pending the administration. The administrators refused to recognize or pay any part of this judgment, although they had assets in their hands, and were about to distribute such assets among the heirs of the deceased, claiming, as it seems, that the federal judgment was barred because the demand on which it was founded had not been allowed as a debt of the intestate, by certain commissioners appointed by the probate court, pursuant to state laws, to audit claims against the decedent's estate. On a bill filed by the complainant to compel the administrators to recognize and pay the judgment obtained against them in the federal tribunal, it was held in effect that a law of the state limiting nonresident creditors of deceased persons to suits in the state courts for the purpose of establishing their demands would not be enforced, and that such nonresident creditors had the right to establish their claims by a suit in the appropriate federal tribunal, and that when so established they were entitled to recognition in the distribution of the assets of the deceased.

In the case of Green's Adm'rs v. Creighton, 23 How. 90, the principal question discussed was whether a nonresident creditor of a deceased person was entitled to sue in the federal court of the proper district for the establishment of his demand, notwithstanding the provisions of a state statute which required all demands against the estates of deceased persons to be allowed by the probate court. The court answered this inquiry in the affirmative, following its decisions in Suydam v. Broadnax, 11 Pet. 67, and Union Bank v. Jolly's Adm'rs, supra. It will be observed in this case that, when the court reached the decision of the question whether complainant's demand was one which entitled him to come into equity for its enforcement, it rested its decision upholding his right to sue in that forum upon the ground that a portion of the assets sought to be recovered were in the hands of the surety of the administrator of the deceased debtor, who had been joined as a defendant in the bill, and that as against such surety it was necessary to obtain a discovery in equity. The decision in question falls far short of establishing the proposition contended for in the case at bar,—that upon an ordinary legal demand against the estate of a deceased person a suit can be maintained in equity as well as at law against his administrator or executor. Since the decision in Green's Adm'rs v. Creighton, establishing the right of a nonresident creditor to sue in the courts of the United States for the establishment of his demand against the estate of a decedent, it has been ruled in Yonley v. Lavender, 21 Wall. 276, that the creditor so obtaining a judgment in the federal tribunal cannot on that account take out an execution against the property of the deceased and cause it to be sold, but must come into the probate court of the state, and take such a share of the assets of the deceased as the administration laws of the state allow to creditors of his class. It was held in this case, in substance, that the administration laws of a state are not merely rules of practice for the courts of the state, but that they are laws limiting the rights of the parties, and that they will be observed by the federal courts in the enforcement of individual rights against the estates of decedents. See, also, in this connection the case of Hess v. Reynolds, 113 U. S. 73, 5 Sup. Ct. 377, which decides that a proceeding against an administrator for the establishment of a demand against his decedent's estate is a suit which is removable to the federal courts when the creditor and the administrator are citizens of different states. Another case supposed to have an important bearing on the subject in hand, from which lengthy quotations have been made by counsel, is Payne v. Hook, 7 Wall. 425, 430. The general statement is found in this, as in some other cases, that "the equity jurisdiction conferred on the federal courts is the same that the high court of chancery in England possesses." But in that case it appeared that the administrator had grossly mismanaged the estate of the deceased; that he had made false settlements with the probate court,—filed a false inventory therein; and that by this and other fraudulent means he had induced a nonresident distributee, who was the complainant, to sell her interest in the estate to the administrator for a grossly

inadequate consideration. The main purpose of the bill appears to have been to cancel the alleged fraudulent purchase of the distributee's interest, and to obtain a decree against the administrator for its full value. There can be no doubt, we think, that the bill in this latter case contained allegations which entitled it to be entertained on that ground, and that it was so entertained, rather than upon the theory that the mere fact that an administrator was a party defendant rendered it a case of equitable cognizance. Probably the most elaborate as well as the latest expression of the views of the supreme court of the United States on this interesting subject is to be found in the case of Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906. In that case it was held, in accordance with well-established principles, that a nonresident creditor of an estate may establish a demand against the same by a suit in the federal court; also, that a nonresident distributee may establish his right to a share in the estate, and enforce such adjudication against the administrator personally, or his sureties, or proceed in any way which does not disturb the actual possession of the property by the state court. But it was said in that connection that the federal courts have no original jurisdiction in respect to the administration of decedents' estates, and that they cannot, by entertaining a suit against an administrator, as they may do in some cases, invest themselves with authority to determine all claims against it. Looking at the circumstances which gave rise to the last-mentioned decision, we find the fact to be that the debts of the estate had been paid, and that the administration proceedings had reached that point when it was the duty of the administrator to make distribution of the estate among those entitled to it. At this juncture a controversy appears to have arisen between the administrator and a nonresident distributee as to the amount of the latter's share in the estate, the determination of which controversy depended in part upon the true construction of the laws of descent of the state of Pennsylvania, and in part upon the question whether a testamentary clause in the will of the decedent, which was inefficacious as a will, could be given effect as a valid declaration of a trust. It was held in substance that a nonresident distributee was entitled to have both of these questions decided by the appropriate federal tribunal. The court did not decide, however, as is now contended, that the holder of an ordinary legal demand against the estate of a decedent may go into a federal court sitting in equity to establish the same merely because his demand is against a dead man's estate. Moreover, it clearly appears in the case last cited that the cause of action was one of equitable cognizance, inasmuch as it involved the existence and enforcement of a trust.

The cases to which we have thus referred serve to illustrate the extent and the appropriate limits of the jurisdiction which the federal circuit courts now exercise in matters pertaining to the administration of the estates of decedents. They have an undoubted jurisdiction to establish demands exceeding $2,000 against the estates of deceased persons, when that jurisdiction is invoked by a nonresident creditor; and, if the demand sought to be enforced in

the federal court by a nonresident creditor happens to be of an equitable nature, it may undoubtedly be enforced by a suit in equity, as distinguished from a suit at law. Speaking generally, we have no doubt that a nonresident may enforce any right or claim which he happens to have against the personal representative of a deceased person by a bill in equity in the appropriate federal tribunal, when such right or claim pertains to any of the recognized heads of equity jurisprudence, or when, for any reason, a court of law is unable to afford adequate relief. But the authorities in question do not support the contention that, in a suit to establish a purely legal demand against the estate of a decedent, the jurisdiction at law and in equity is concurrent so far as the federal courts are concerned. Nor do we perceive any reason why the equity powers of these courts should be invoked to establish a purely legal demand, since it is manifest that, as courts of law, they are able to afford the same measure of relief that can be obtained in equity. When a demand has been established in a federal court, whether at law or in equity, it cannot be enforced against the property of the decedent by execution in the ordinary form, but must await payment by the process of administration in the mode provided by state laws, which are binding alike upon the federal and state tribunals. Yonley v. Lavender and Union Bank v. Jolly's Adm'rs, supra. Moreover, the federal courts, on a bill filed to establish a demand against an estate, cannot take to themselves the full administration of the estate, when it is undergoing administration pursuant to local laws, as the English chancery courts might have done under a creditor's bill. Byers v. McAuley, supra. The power of the federal court ceases with the establishment of the demand, unless it becomes necessary to take further action for the purpose of compelling the administrator or executor to recognize the validity of the federal judgment and give it full force and effect as an adjudicated claim against the estate. In other words, the jurisdiction of these courts over the administration of estates is less extensive than that which was formerly exercised by the English chancery courts. Their jurisdiction at best is but a limited one, depending as it does in all cases either upon the existence of a federal question or diverse citizenship; and they are bound, like the state courts, to render a faithful obedience, within certain well-defined limits, to local administration laws that have now rendered it possible to administer estates fairly and equitably without invoking the extraordinary powers of a court of chancery. Furthermore, the authority of the federal courts, as courts of equity, is circumscribed by the positive mandate of the judiciary act that "suits in equity shall not be sustained in either of the courts of the United States, in any case where a plain, adequate and complete remedy may be had at law." Rev. St. § 723. As we have before remarked, and as we now take occasion to repeat, a legal demand against a decedent's estate can now be as effectually enforced by a suit at law as by a bill in equity, and there is no necessity for resorting to the latter proceeding. No advantage is gained by suing in equity rather than at law, for the decree in that forum must stop short with the ascertainment and allowance

of the creditor's demand; and if, in any case, or for any reason, it becomes necessary to take further action against the administrator to enforce payment of the allowance, the power of the court, as a court of equity, may be invoked in aid of a judgment at law as well as in aid of a decree in chancery. We are of the opinion, therefore, that as the claim involved in the case at bar was an ordinary legal demand, which grew out of a breach of contract by the defendants' intestate, the complainants below should have sued at law to establish the demand, and that the bill was properly dismissed. The decree of the circuit court is therefore affirmed.