WALKER et al. v. BROWN et al.

(Circuit Court, S. D. Iowa, C. D. July 15, 1897.)

No. 2,285.

APPEAL—EFFECT OF DECISION.
Where the supreme court has considered a case at length on its merits, and remanded it to the circuit for further proceedings not inconsistent with its opinion, the circuit court will not permit the defendant to amend his answer so as to deny a fact affirmatively passed upon and determined by the supreme court.

Willits, Robbins & Case, for plaintiffs.
N. T. Guernsey, for defendants.

WOOLSON, District Judge. The bill herein was filed on November 2, 1891. On February 1, 1892, defendants filed their answer. By leave, an amendment to the bill was filed on November 4, 1892, and an amendment to the answer on November 14, 1892. Replication having been duly filed, the case proceeded to a hearing on the proofs presented, resulting on October 20, 1893, in a decree for defendants. 58 Fed. 23. Appeal was duly had to the circuit court of appeals for the Eighth circuit, resulting September 10, 1894, in the affirmance of such decree. 11 C. C. A. 135, 63 Fed. 204, and 27 U. S. App. 291. By writ of certiorari issuing from the supreme court of the United States, the suit was taken to the latter court, which court on March 1, 1897, reversed the decree. 165 U. S. 654, 17 Sup. Ct. 453. The mandate of the supreme court, filed in this court April 5, 1897, and addressed to the judges of this court, contains the following:

"On consideration whereof, it is now here ordered, adjudged, and decreed by this court that the decree of the said United States circuit court of appeals in this cause be, and the same is hereby, reversed, with costs, and that the said appellants recover against the appellees the sum of —— for their costs. And it is further ordered that this cause be, and the same is hereby, remanded to the circuit court of the United States for the Southern district of Iowa for further proceedings not inconsistent with the opinion of this court. You therefore are hereby commanded that such execution and further proceedings be had in said cause, in conformity with the opinion and decree of this court, as, according to right and justice, and the laws of the United States, ought to be had, the said writ of certiorari notwithstanding."

Defendants now apply for leave to file an amendment to their answer. Plaintiffs resist, insisting that under the mandate in this case it is the duty of the court to enter a decree herein for plaintiffs, and

that the proposed amendment cannot be permitted. The general rules which prescribe the power and control the action of this court after mandate received are not seriously in dispute between counsel. The contention of counsel relates to the application of these rules, under what is claimed by defendants to be the peculiar conditions herein. Mr. Justice Gray, speaking for the supreme court in Re Sanford Fork Co., 160 U. S. 247, 255, 16 Sup. Ct. 291, 293, says:

"When a case has once been decided by this court on appeal, and remanded to the circuit court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The circuit court is bound by the decree, as the law of the case, and must carry it into execution according to the mandate. The court cannot vary it, or examine it for any other purpose than execution, or give any other or further relief, or review it, even for apparent error, upon any matter decided on appeal, or intermeddle with it, further than to settle so much as has been remanded. * * * But the circuit court may consider and decide any matters left open by the mandate of this court, and its decision of such matters can be reviewed by a new appeal only. The opinion delivered by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate; and either upon an application for a writ of mandamus, or upon a new appeal, it is for this court to construe its own mandate, and to act accordingly."

That case went to the supreme court from a final decree entered for plaintiffs upon a decision sustaining exceptions to the answer, defendant having elected to stand on his answer. The appellate court reversed this decree, holding the exceptions not well taken. In the circuit court, defendant moved for a decree upon the mandate, which was refused, and leave granted to amend the bill. Whereupon defendant applied to the supreme court for a writ of mandamus to compel entry of decree upon the mandate. The supreme court clearly point out (page 257, 160 U. S., and page 291, 16 Sup. Ct.) the difference between such a case and one where the whole case is presented for final decree. In the former the case is not ready for final decree. When the exceptions to the answer are overruled in obedience to the mandate, the case stands before the circuit court in the same attitude as though the latter court had originally, and without appeal, overruled the exceptions, which leaves the parties at liberty to perfect the pleadings and present their proofs, preparatory to a final hearing:

"The case being thus left open, by the opinion and mandate of this court, and by the general rules of practice in equity, for further proceedings, with a right to plaintiffs to file a replication putting the cause at issue, the circuit court might, in its discretion, allow amendments of the pleadings for the purpose of more fully or clearly presenting the facts at issue between the parties. The case is quite different in this respect from those in which the whole case, or all but a subsidiary question of accounting, had been brought to and decided by this court upon the appeal, as in the cases principally relied upon by the petitioner. It must be remembered, however, that no question once considered and decided by this court can be examined at any stage of the same case."

The latest deliverance upon this general question appears to be the case of In re Potts (decided March 15, 1897) 166 U. S. 263, 17 Sup. Ct. 520. This was upon petition for a writ of mandamus to the circuit court to enter a decree for plaintiffs in a suit for infringement of letters patent. On the original hearing the circuit court had found adversely to plaintiffs,—sustaining the defense of want of novelty in the invention,—and dismissed the bill. 44 Fed. 680. Upon appeal

to the supreme court the decree entered below was reversed, and the cause remanded "for further proceedings in conformity with" that opinion. On receipt of the mandate the circuit court reversed its former decree, and sent the cause to a master to take an account of profits. But, before further action was had by the court, defendants filed a petition for rehearing, for newly-discovered evidence affecting the novelty of the invention. The circuit court, on notice to plaintiffs, heard the application, and, against plaintiffs' insistence that the circuit court was without power, under the mandate, so to do, granted the petition for rehearing. 71 Fed. 574. In his opinion, Judge Sage relies upon the decision in the Sanford Fork Case, supra, and adds:

"The opinion of the supreme court will, of course, be recognized as the law of the case; and unless the defendants, upon the matter suggested in their application for rehearing, can make a case radically different from that presented to the supreme court, the rehearing will not avail."

Mr. Justice Gray, delivering the opinion of the supreme court on the application for a writ of mandamus, quotes at length from the Sanford Fork Case, supra, and then adds:

"The case now in question comes exactly within the class of cases so referred to and distinguished [in the Sandford Fork Case]. It was originally heard in the circuit court, not merely upon a question of sufficiency of pleading, but upon the whole merits. That court, at a hearing upon pleading and proofs, involving the question of the novelty of the alleged invention, and of its infringement by defendants, entered a final decree dismissing the bill. Upon the appeal from that decree both these questions were presented to, and considered by, this court, and were by it decided in plaintiffs' favor. Its decision of those questions in that way was the ground of its opinion, decree, and mandate, reversing the decree of the circuit court, dismissing the bill, and remanding the cause to that court for further proceedings in conformity with the opinion of this court. The decision and decree of this court did not amount, indeed, technically speaking, to a final judgment, because the matter of accounting still remained to be disposed of. But they constituted an adjudication by this court of all questions, whether of law or fact, involved in the conclusion that the letters patent of the plaintiffs were valid, and had been infringed. Applying the rules stated at the beginning of this opinion, the questions of novelty and infringement were before this court, and disposed of by its decree, and must therefore be deemed to have been finally settled, and could not afterwards be reconsidered by the circuit court. When the merits of a case have once been decided by this court on appeal, the circuit court has no authority, without express leave of this court, to grant a new trial, a rehearing, or a review, or to permit new defenses on the merits to be introduced by amendment to answer."

And the court, having declared that "upon the record, as it stands, a clear case is shown for issuing a writ of mandamus to set aside those orders," etc., gave 20 days to defendants, within which to apply to that court for leave to file a petition for rehearing, and provided that, unless such petition was so presented, writ of mandamus should issue.

The case at bar was heard on its merits after proofs were all in. Plaintiffs claimed to have an equitable lien on certain municipal bonds; such lien arising because of a certain letter or written agreement signed by decedent, T. E. Brown, on the strength of which plaintiffs had sold a large amount of goods to the party named in such writing. The defendants had been duly appointed to administer on the estate of said decedent, Brown. By the pleadings it appeared that the bonds in question had been, in his lifetime, by decedent, given to

his wife, the defendant Anna L. Brown, and were at time of his death her individual property. Thereupon the bill was so amended as to aver that the bonds referred to were in the possession of said Anna L. Brown, and to ask for the recognition of an equitable lien on the bonds in her hands. Bank v. Ayers, 160 U. S. 660, 16 Sup. Ct. 412. The circuit court decided that the letter or agreement above referred to did not give to plaintiffs an equitable lien on said bonds. In affirming the decree entered below, the circuit court of appeals announced the same view. Under the pleadings and proofs, as construed in the light of the opinion rendered in the case by the supreme court, these decisions were erroneous. What questions did the supreme court consider and decide in this case, and to what extent? The appeal brought before that court the entire case. On page 664, 165 U. S., and page 457, 17 Sup. Ct., Mr. Justice White states:

"The questions which first require solution are, did the agreement embodied in the letter create an equitable lien in favor of Walker & Co. upon the bonds of Brown, pledged to the Union National Bank? And, if so, were they returned to Brown under such circumstances as to cause the lien, if any existed, to be operative against the bonds in the hands of Mrs. Brown, and therefore subject to such lien, if any attached to them, in the hands of Brown?"

In considering the legal principles by which the question of equitable lien is to be determined, the court say (Id.):

"It is clear that if the express intention of the parties was to create an equitable lien upon the bonds, or the value thereof, or if such intention arises by a necessary implication from the terms of the agreement construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances, such equitable lien will be enforced by a court of equity against the bonds in the hands of Brown, or against third persons who are volunteers, or who have notice."

With reference to the "words of the contract, embodied in the letter," the court say (page 665, 165 U. S., and page 457, 17 Sup. Ct.):

"This language certainly designates the bonds, or the value thereof, as a security for the debt to Walker & Co. It says that the bonds belonging to Brown shall not be returned to him so long as the debt to Walker is unpaid."

And on page 666, 165 U. S., and page 457, 17 Sup. Ct., the court declare:

"Manifestly, the dedication of Brown's bonds to the particular and special payment of Walker's debt * * * left the bonds, as a necessary consequence of the equitable lien which the contract created, at the risk of the business; that is to say, if the business did not pay the debt which it owed to Walker & Co., the bonds, or their value, were submitted to the risk of such nonpayment, and therefore subject to the equitable lien, if the risk of the business made it necessary for Walker & Co. to exercise the lien which the contract gave that firm."

And on page 669, 165 U. S., and page 459, 17 Sup. Ct.:

"From these considerations we conclude that the contract provided for a lien upon the bonds, to secure Walker's debt, subordinate to the lien then outstanding, resulting from the existing pledge, and stipulated against a return of the bonds in the event of the payment of the debt by Loyd & Co., and imposed upon Brown the obligation not to assert, quoad the debt of Walker & Co., a claim against the assets of Loyd & Co. for the value in the event the risk of the business, the outstanding pledge, prevented the return of the bonds to the possession of Loyd & Co."

In their answer, defendants averred that the debt of Loyd & Co. to plaintiffs, for whose payment the supreme court find the letter or agreement executed by Brown gave to Walker & Co. an equitable lien on the bonds, had been extinguished by Walker & Co. having accepted chattel-mortgage security therefor, and afterwards having proceeded with reference thereto, in Washington, in the manner particularly set out in such answer. As to this contention the supreme court (pages 673, 674, 165 U. S., and page 460, 17 Sup. Ct.) decide that such contention—

"Is fully answered by the statement that there is no proof whatever of any agreement that the taking of security should extinguish the original claim; and the proof is also clear that the acts of Walker as to the purchase of the rights of attaching creditors, and the subsequent dealings with the property, were upon the express understanding with Brown that these transactions should in no way impair the rights of Walker & Co. under the contract which we have considered."

On page 672, 165 U. S., and page 460, 17 Sup. Ct., the court say:

"Without going into details as to result of [chattel] mortgages and attachments, it suffices to say that nothing was paid on account of Walker & Co.'s debt."

The opinion closes as follows (pages 674, 675, 165 U. S., and page 461, 17 Sup. Ct.):

"As the Memphis bonds are admittedly in the hands of Mrs. Brown as a gift from her husband, the enforcement of the lien thereon presents no question as to the jurisdiction of a court of equity over the estate of a decedent. It follows from the foregoing that the court below erred in refusing to recognize the claim of the complainants, and to enforce in their favor a lien on the Memphis bonds in the hands of Mrs. Brown; and for the errors in these particulars the decree must be reversed, and the case remanded to the trial court for further proceedings not inconsistent with this opinion."

What, then, is the duty of this court, under the mandate of the supreme court, construed in the light of the opinion on which such mandate is based? The entire case having gone to the supreme court, and having been there considered at length on its merits, what is established by its opinion and decision, and what is referred or left to this court for its action in the further progress of the case? That the contract (letter) in question gave to Walker & Co. an equitable lien on the bonds therein referred to is determined, and also that Walker & Co. have the right to the enforcement of such lien in the hands of Mrs. Brown, one of the defendants. See the closing portion of the opinion, above quoted. In arriving at such conclusions the supreme court considered on its merits the entire case presented by the pleadings and proofs, so far as the same related to the existence of a debt from Loyd & Co. to the plaintiffs, and the right of plaintiffs to an equitable lien therefor against the bonds in the hands of Mrs. Brown. Included in this is the amount of such debt, which (page 661, 165 U. S., and page 456, 17 Sup. Ct.) is declared to be "established by the proof" as $13,916.39, and (page 674, 165 U. S., and page 460, 17 Sup. Ct.) to draw 6 per cent. per annum. As to a claim by plaintiffs, asserted in the bill, to recover from the estate of Brown for $560.14, expenses incurred by plaintiffs, on agreement of Brown

to repay, in attempting to collect the Loyd & Co. debt, the supreme court (Id.) "do not determine whether the sum was really due, and whether, if due, it is enforceable in a court of equity"; the same not having been pressed on hearing of the appeal. Counsel for plaintiffs expressly state, on hearing of motion for decree on mandate, that this last-named claim is not pressed here, nor is the same presented for insertion in the decree. Looking, then, at the mandate and opinion, the case seems ripe for a decree. The amendment to the answer now sought to be filed by defendants in substance avers that in 1886—about three years prior to the execution by Brown of the letter to Walker & Co. by which the equitable lien was created—the decedent, Brown, by a formal written assignment, transferred the bonds in question to his wife, the defendant Anna L. Brown, "to have and to hold the same in her own right and separate estate"; that same were delivered to her at date of such assignment; that she never authorized her said husband to pledge said bonds, or either of them, to complainants or any one else, nor authorized or ratified any such pledge, nor had any personal knowledge of the transaction in connection with the letter above referred to, or of the writing of the letter, or of its contents, until after the institution of this suit, and that said bonds were not in possession of her said husband when he wrote said letter, nor had she ever authorized him to take possession or custody of same, nor did he have custody thereof, with her consent. after transfer thereof to her by said written assignment; and that the same are not now owned by her. To the interrogatories attached to the bill, defendants made answer (see same attached to answer filed herein February 1, 1892), stating "that these respondents are advised and believe that the said bonds are yet held and in the possession of Anna L. Brown, who holds them as her private property." The supreme court regard the same as "admittedly in the hands of Mrs. Brown as a gift from her husband." This court may not now permit to be modified by amendment a fact affirmatively passed upon and determined by that court, where the right thus to amend has not been reserved to defendants or granted by that court. The same general remark applies to other portions of the proposed amendment. The supreme court. at various points in its opinion, finds and regards the bonds, at the date of the letter from Brown to Walker & Co., as belonging to Brown, and loaned by him to Loyd & Co. Pages 656, 658, 665, 666, 674, 165 U. S., and pages 456, 457, 459-461, 17 Sup. Ct. The opinion, in its statement of the facts established by the proof. as well as its application thereto of the law of the case, regards and determines the bonds as rightfully in Brown's possession, and as outstanding in a valid pledge, as well as lawfully bound by this equitable lien created by his letter to Walker & Co. If defendants were now permitted to amend as proposed, this court would necessarily thereby "permit new defenses on the merits to be introduced by amendment of the answer" after the merits of the case had been once decided by the supreme court on appeal. This is expressly declared in Re Potts, supra, to be be-

yond the authority of this court. Because, as I construe the mandate, this court has no authority to allow the amendment proposed, and therefore has no discretion in the matter, the application to file the proposed amendment cannot be entertained, and is therefore denied, and the clerk will enter an order accordingly, to which defendants except.

On presentation of his motion for a decree on the mandate, counsel for plaintiffs stated in open court that plaintiffs do not press their claim stated in bill, for $560.14, as due for expenses by plaintiffs incurred, under agreement by Brown of repayment, in attempted collection of their debt against Loyd & Co. In my judgment, it is desirable that this withdrawal be formally made of record. This leaves no disputed matters of fact for the determination of this court, and requires but the framing of a decree to carry out the mandate of the court, and to "enforce in [plaintiffs'] favor a lien on the Memphis bonds in the hands of Mrs. Brown"; the amount of the debt secured by such lien having been determined and stated in the opinion of the supreme court. Counsel for plaintiffs, after having formally withdrawn said claim for $560.14, may prepare a decree accordingly, and submit same to counsel for defendants. To all of which defendants duly except. Should defendants desire to present an application to the supreme court for a writ of mandamus directing this court to entertain the application to file the proposed amendment, and exercise its discretion as to such filing, such order will be entered as to protect the interests of the parties during the pendency of such application before the supreme court.