## HESS *v.* REYNOLDS, Administrator.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

Submitted December 9, 1884.—Decided January 5, 1885.

A proceeding in a State court against an administrator, to obtain payment of a debt due by the decedent in his lifetime, is removable into a court of the United States, when the creditor and the administrator are citizens of different States, notwithstanding the State statute may enact that such claims can only be established in a Probate Court of the State, or by appeal from that court to some other State court.

The act of March 3, 1875, to determine the jurisdiction of the Circuit Courts

and regulate the removal of causes from State courts, does not repeal or supersede all other statutes on those subjects, but only such as are in conflict with this latter statute. The third clause of section 639 of the Revised Statutes is not, therefore, abrogated or repealed.

An application for removal under that clause is in time, if made before the trial or final hearing of the cause in the State court.

The report of commissioners to whom a claim has been referred by a Probate Court under the statutes of Michigan, is not such final hearing within the meaning of that section.

The removal in all cases is into the Circuit Court of the District, which embraces territorially the State court in which the suit is pending at the time of the removal, without regard to the place where it originated.

The record shows that plaintiff in error, who was a citizen of Missouri, prosecuted his claim in the Probate Court of Ionia County, Michigan, against the estate of Warren Sherwood, deceased, of which William Reynolds had been appointed administrator. The claim being resisted, was, in due course of proceeding, referred to commissioners appointed by the probate judge, who reported against its allowance. Thereupon Hess, as the Michigan statute authorized, appealed to the Circuit Court of Ionia County, where he was entitled to a trial by jury. The judge of that court having been counsel for the administrator in the case, it was, by proper order, removed to the Circuit Court of Jackson County after a delay of several years, and from that court into the Circuit Court of the United States, on the affidavit of Hess that he had reason to believe, and did believe, that, from prejudice and local influence, he would not be able to obtain justice in said State court.

The Circuit Court remanded the cause to the State court from which it had been removed; and this writ of error was brought to that judgment.

*Mr. Henry Newbegin,* and *Mr. B. B. Kingsbury* for plaintiff in error.

*Mr. Edgar M. Marble* for defendant in error.—Under the statutes of Michigan, no process can issue from the State court to collect the claim. The determination of the State court is certified to the Probate Court and claims paid upon the basis

of the allowance made. This adjustment of each claim is in no sense a suit between parties in the meaning of the Removal Act. *West* v. *Aurora*, 6 Wall. 139, 142; *Du Vivier* v. *Hopkins*, 116 Mass. 125, 128. When a case is legally removed, the jurisdiction of the State court ceases for all purposes, and the suit cannot be remanded to the State court for any purpose. *Kanouse* v. *Martin*, 15 How. 198; *Insurance Co.* v. *Dunn*, 19 Wall. 214; *Mahone* v. *Railroad Co.*, 111 Mass. 72; *Partridge* v. *Insurance Co.*, 15 Wall. 573; *Du Vivier* v. *Hopkins*, above cited. In this case a remand would be necessary, in order to enforce, according to Michigan laws, any judgment which might be rendered. Even if the cause was removable, the application for the removal came too late. The statutes of Michigan provided for the appointment of commissioners by the Probate Court to examine and adjust claims against estates of deceased persons. All claims must be presented to the commissioners. They act judicially, and their judgment is final if not appealed from. *Streeter* v. *Paton*, 7 Mich. 341, 346; *Fish* v. *Morse*, 8 Mich. 34; *Clark* v. *Davis*, 32 Mich. 154, 157; *Sherburn* v. *Hooper*, 40 Mich. 503. The claimant presented his claim to such commissioners. They passed upon it. This brings his case within *Stevenson* v. *Williams*, 19 Wall. 572, which is decisive. The late Mr. Justice Swayne, at Circuit for the Eastern District of Michigan in August, 1878, decided this point in accordance with our views. *In re Fraser*, 18 Albany Law Journal, 353. The case of *Du Vivier* v. *Hopkins*, above cited, is also exactly in point, as the Michigan and Massachusetts statutes are substantially alike. See also *Gaines* v. *Fuentes*, 92 U. S. 10; *Broderick's Will*, 21 Wall. 503; *Yonley* v. *Lavender*, 21 Wall. 276; *Tarver* v. *Tarver*, 9 Pet. 174; *Fouvergne* v. *New Orleans*, 18 How. 470.

Mr. Justice Miller delivered the opinion of the court. He recited the facts as above stated, and continued:

The first objection to the removal is that the proceeding in the State court, which was commenced in the Probate Court to obtain payment of a claim against the estate of a decedent, then under administration in that court, was within the exclusive

jurisdiction of the State court, and could not be transferred to a court of the United States.

This proposition has been often asserted here and as often denied.

It is not denied that the laws of the States are valid which provide for the descent and distribution of property of a decedent, for the proof and registration of wills, for the collection of debts due to the decedent, and the payment of the debts which he owed at the time of his death. Nor is it denied that such courts as are usually called probate courts are rightfully vested in a general way with authority to supervise the collection of these debts and other assets, the payment of the debts of the decedent, and to make distribution of the remainder.

But the estate of a decedent is neither a person nor a corporation. It can neither sue nor be sued. It consists of property, or rights to property, the title of which passes on his death, with right of possession, according to the varying laws of the States, to executors of a will, administrators of estates, heirs or devisees, as the case may be.

These parties represent in their respective characters the rights which have devolved on them in any controversy, legal or equitable, which may become a matter of judicial contest with other parties having conflicting interests. In regard to controversies with debtors and creditors, the executor, if there be a will, or the administrator, if one has been appointed, represents the rights and the obligations which had been those of the deceased. The right of the administrator or executor to sue in the ordinary courts of the country to enforce the payment of debts owing the decedent in his lifetime, and unpaid at his death, has always been recognized; and it is believed that no system of administering the estates of decedents has changed this principle.

The courts of the United States have always been open to such actions when the requisite citizenship exists, and for this purpose the citizenship of the administrator or executor controls, and not that of the decedent.

So, also, until recent times, the administrator or executor was

liable·to be sued in the ordinary courts, whether State or national, on obligations contracted by the decedent, and such is probably the law of most of the States of the Union at this day. To such a suit the administrator could, at common law, have pleaded that there were no assets in his hands unadministered, or he could have denied the cause of action set up by plaintiff. How far a denial of assets would be a good plea now, depends on the atutes of the various States and the various modes of obtaining equality of distribution among creditors, where there is not enough to pay all.

Such suits, in the absence of any controlling law, can be brought, and have been brought, in the courts of the United States, where the requisites of jurisdiction between the parties exist. This jurisdiction of the courts of the United States, in controversies between citizens of different States, cannot be ousted or annulled by statutes of the States, assuming to confer it exclusively on their own courts.

It may be convenient that all debts to be paid out of the assets of a deceased man's estate, shall be established in the court to which the law of the domicil has confided the general administration of these assets. And the courts of the United States will pay respect to this principle, in the execution of the process enforcing their judgments out of these assets, so far as the demands of justice require. But neither the principle of convenience, nor the statutes of a State, can deprive them of jurisdiction to hear and determine a controversy between citizens of different States, when such a controversy is distinctly presented, because the judgment may affect the administration or distribution in another forum of the assets of the decedent's estate. The controverted question of debt or no debt is one which, if the representative of the decedent is a citizen of a State different from that of the other party, the party properly situated has a right, given by the Constitution of the United States, to have tried originally, or by removal in a court of the United States, which cannot be defeated by State statutes enacted for the more convenient settlement of estates of decedents.

These views have been expressed by this court in many cases,

where they were proper grounds for the decisions made. The latest of them, in which the others are reviewed with care, is that of *Ellis* v. *Davis*, 109 U. S. 485, in which the opinion was delivered by Mr. Justice Matthews. Among the cases there cited with approval is that of *Gaines* v. *Fuentes*, 92 U. S. 10. That was a suit brought in the Second District Court for the Parish of Orleans, which, by the laws of Louisiana, was vested with jurisdiction over estates of deceased persons and probate of wills. It was brought to annul the will of Daniel Clark, and to set aside the decree of the court by which it was admitted to probate.

Application for removal of the case into the Circuit Court for the United States, on the ground of prejudice and local influence, under the act of 1867, as in the case now before the court, was refused, though the requisite citizenship of the parties was shown. The action of the District Court having been affirmed in the Supreme Court of that State, the case was brought here on the allegation of error in refusing to grant the order of removal. The same argument was advanced in favor of the exclusive jurisdiction of the State court as in the brief of the counsel in the present case. But this court said : "The Constitution imposes no limitation upon the class of cases involving controversies between citizens of different States, to which the judicial power of the United States may be extended; and Congress may, therefore, lawfully provide for bringing, at the option of either of the parties, all such controversies within the jurisdiction of the federal judiciary. . . . And if by the law obtaining in the State, customary or statutory, they can be maintained in a State court, whatever designation that court may bear, we think they may be maintained by original process in a Federal court where the parties are, on the one side, citizens of Louisiana, and on the other, citizens of other States." This court reversed the judgment of the Louisiana courts, and held that the application for the removal should have been granted, and ordered the case to be remanded to the Parish District Court, with directions to make the transfer. The cases of *Payne* v. *Hook*, 7 Wall. 425, and *Hyde* v. *Stone*, 20 How. 170, are to the same effect. In

the latter case the court said, with much force and propriety, that it had " repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the States which prescribe the modes of redress in their courts or which regulate the distribution of their judicial power."

The case of the *Boom Co.* v. *Patterson*, 98 U. S. 403, is also in point. That was a special proceeding to condemn property under laws of the State of Minnesota in the exercise of the right of eminent domain, which, commencing before special commissioners to assess damages, was by appeal brought into a court of general jurisdiction, and from there removed, rightfully as this court held, into the Circuit Court of the United States.

The case before us was one removable into the court of the United States.

The next objection to the removal is, that the application was made too late.

If the case is only removable under the act of 1875, and if that statute repeals or supersedes all other statutes for the removal of causes from the State courts into the Circuit Courts of the United States, then the motion was made too late, for there was a period of five years in the Circuit Court of Ionia County during all which time the case stood for trial. See *Pullman Palace Car Co.* v. *Speck and others, post,* 84.

But though such has often in argument been asserted to be the effect of the act of 1875, the language of the repealing clause of it is not so comprehensive. That language is, " That all acts and parts of acts in conflict with the provisions of this act are hereby repealed." This implies very strongly that there may be acts on the same subject which are not thereby repealed.

The usual formula of a repealing clause intended to be universal is, that all acts on this subject, or all acts coming within its purview, are repealed, or the acts intended to be repealed are named or specifically referred to. In this case the effect of the statute as a repeal by implication, arising from inconsistency of provisions, or from the supposed intention of the legis-

lature to substitute one new statute for all prior legislation on that subject, is not left to its usual operations, but the statute to be repealed must be in conflict with the act under consideration or that effect does not follow. And this was wise, for Congress well knew that there were many provisions of the laws for such removals, which might or might not come under the provisions of the act of 1875, and which might be exercised under regulations different from that statute, and accordingly these were left to stand, so far as they did not conflict with that act.

The provisions of the act of 1867, by which removals are authorized on the ground of prejudice and local influence, are embodied in the Revised Statutes in the third clause of section 639. It declares that in such a case, with the requisite citizenship, when the non-resident party files the proper affidavit, at any time before the trial or final hearing of the suit, it shall be removed. We do not think this provision is embraced in the act of 1875, which says nothing about prejudice or local influence, and is not in conflict with that act. We are of opinion that this clause of section 639 remains, and is complete in itself, furnishing its own peculiar cause of removal, and prescribing, for reasons appropriate to it, the time within which it must be done. One of these reasons is, that the prejudice may not exist at the beginning, or the hostile local influence may not become known or developed at an earlier stage of the proceedings. Congress, therefore, intended to provide against this local hostility, whenever it existed, up to the time of the trial.

It is said, however, that the trial spoken of had taken place before the commissioners of Ionia County, to whom the case had been referred. But we do not look at that proceeding as a trial within the meaning of the statute. It was merely a report, subject to be affirmed or rejected by the probate judge, and, by the express terms of the statute, subject to a right of appeal to a court in which a trial by jury could be had. The latter was the trial or final hearing of the suit which would conclude the right of removal, and until such trial commenced the right of removal under this provision remained.

It is argued that the cause should have been removed to the

Circuit Court for the Western District of Michigan instead of the Eastern, because the county of Ionia, in which the suit originated, is in the former.

But the language of the removal statute is, that suits shall be removed into the Circuit Court of the district where such suits are pending. Undoubtedly this means where they are pending at the time of removal. This suit was not then pending in the Western District of Michigan, but in the County of Jackson, which is in the Eastern District of that State.

We are of opinion that the case was properly removed from the Circuit Court of Jackson County into the Circuit Court of the United States for the Eastern District of Michigan, and that *that* court erred in remanding it.

*Its judgment is therefore reversed, with instructions to proceed in the case according to law.*

Mr. Justice Gray dissented.