## OWSLEY v. CENTRAL TRUST CO. OF NEW YORK.

(District Court, S. D. New York. May 22, 1912.)

1. INTEREST (§ 22*)—"JUDGMENT"—CLAIMS AGAINST DECEDENT'S ESTATE—ALLOWANCE—EFFECT.

Hurd's Rev. St. Ill. 1909, c. 3, § 61, provides that whoever has a claim against an estate, and fails to present it for adjustment at the term of court selected by the executor or administrator, may file a copy thereof with the clerk of the court, whereupon, unless process is waived, the clerk shall issue summons requiring the executor or administrator to defend at a term specified in the summons which shall be served on the executor or administrator, and the rule of the court of Cook county, Ill., declares that claims, if presented after the adjustment term, shall be by filing a copy of the claim with a præcipe for a summons with the executor or administrator, or by filing with such claim an appearance in writing of the executor or administrator. *Held*, that where, after the appearance term, a foreign creditor of a decedent, whose estate was administered in the probate court of Cook county, filed the claim in accordance with such provisions, and the same was allowed, such allowance constituted a judgment which merged the claim and thereafter drew interest at 5 per cent. only under Hurd's Rev. St. Ill. 1909, c. 74, §§ 3, 4, providing that judgments recovered before any court or magistrate shall draw interest at that rate.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 43–53; Dec. Dig. § 22.*

For other definitions, see Words and Phrases, vol. 4, pp. 3827–3842; vol. 8, pp. 7695, 7696.]

2. EXECUTORS AND ADMINISTRATORS (§ 255*)—ALLOWANCE OF CLAIMS—CONCLUSIVENESS.

The allowance of a claim against a decedent's estate according to the law of Illinois is final against the representatives of the estate so far as personalty is concerned, but is merely prima facie evidence of the debt as against realty.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 907–909; Dec. Dig. § 255.*]

3. JUDGMENT (§ 689*)—CONCLUSIVENESS—PERSONS CONCLUDED.

Under the rule that judgments are available by and against parties and privies, and that executors under the same will, but appointed for different jurisdictions, are privies, an ancillary executor was bound by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a judgment allowing a claim against the estate in the domiciliary jurisdiction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1212; Dec. Dig. § 689.*]

4. EXECUTORS AND ADMINISTRATORS (§ 43*)—PROPERTY—TITLE.

An executor named in a will takes title to all of the testator's personalty wherever situated.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 281; Dec. Dig. § 43.*]

5. EXECUTORS AND ADMINISTRATORS (§ 86*)—VOLUNTARY PAYMENT—NONRESIDENT DEBTORS.

Voluntary payments made to an executor by nonresident debtors constitute a good acquittance.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 323, 359–383; Dec. Dig. § 86.*]

6. EXECUTORS AND ADMINISTRATORS (§ 171*)—ASSIGNMENT BY EXECUTOR—EFFECT.

An assignment of a claim by the executor of an estate enables his assignee to sue anywhere.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 649, 650; Dec. Dig. § 171.*]

7. EXECUTORS AND ADMINISTRATORS (§ 255*)—CLAIMS—ALLOWANCE—FILING—EFFECT.

Where a decedent's estate was being administered in the probate court of Cook county, Ill., and a foreign creditor elected to file his claim there in order to reach Illinois funds as well as its own collateral, it was bound by the Illinois judgment allowing its claim, not only as to allowance but as to the rate of interest prescribed by the Illinois laws thereafter to be earned by the judgment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 907–909; Dec. Dig. § 255.*]

8. JUDGMENT (§ 815*)—FULL FAITH AND CREDIT.

Where judgment is rendered allowing a claim against a decedent's estate, full faith and credit can be given to such judgment in the courts sitting in another state only by ascertaining its effect, according to the law and usage in the courts of the state where it has been rendered.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1445–1448; Dec. Dig. § 815.*

Giving full faith and credit to judgment jurisdiction of federal courts, see note to Bailey v. Mosher, 11 C. C. A. 318.]

At Law. Action by Louis S. Owsley, as ancillary executor, against the Central Trust Company of New York. Verdict directed for plaintiff.

This cause having come on to be heard before the court and a jury, the following material facts appeared by uncontradicted evidence:

Charles T. Yerkes, a citizen of Illinois, domiciled and resident in Chicago, died testate. His will was duly admitted in the probate court of Cook county, Ill., and letters testamentary issued to the plaintiff herein, one of the executors named in the will. Plaintiff subsequently obtained ancillary letters testamentary in the Surrogate's Court of New York County.

At and before his decease Yerkes was indebted to defendant the Central Trust Company in large sums of money on certain promissory notes, to secure which the trust company held as collateral certain stocks and bonds. After Yerkes' death, the Central Trust Company purchased other notes of Yerkes, which notes carried with them other collateral (or an interest therein).

On March 9, 1907, the Central Trust Company lawfully owned and held, in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

good faith and for value, promissory notes of Yerkes of the face value of $705,004, all secured by collateral.

On April 17, 1906, Owsley, as executor, caused to be duly posted and published, in compliance with the law of Illinois, a notice calling upon all persons having claims against Yerkes' estate "to attend and present such claims at the probate court of Cook county, Ill., for the purpose of having the same adjusted at a term of said court" to be held on June 4, 1906. The Central Trust Company, which is a corporation of the state of New York, did not present any claim in pursuance of this notice.

It is, however, provided by Illinois Rev. Stat. 1909, c. 3, § 61, that: "Whoever has a claim against an estate, and fails to present the same for adjustment at the term of court selected by the executor or administrator, may file a copy thereof with the clerk of the court; whereupon, unless the executor or administrator will waive the issuing of process, the clerk shall issue a summons directed to the sheriff of the county, requiring such executor or administrator to appear and defend such claim at a term of the court therein specified, which summons, when served, shall be sufficient notice to the executor or administrator of the presentation of such claim." In accordance with this statute a rule of the probate court of Cook county provides that claims against estates, if presented "after the adjustment term," shall be by "filing a copy of the claim together with a præcipe for a summons with the executor or administrator, or by filing with such claim the appearance in writing of the executor or administrator."

The Central Trust Company acted under this statute and rule of court, and on March 12, 1907, filed a claim, and afterwards, and on April 29, 1907, amended the same, and Owsley as executor filed the following appearance and consent: "I hereby enter my appearance in the matter of the within claim, and I waive service of process thereon. I hereby consent to the allowance of the within claim for $723,327.30." And thereupon it was recorded in said probate court in divers volumes known as "Minute Book," "Probate Docket," and "Probate Court Record," that the claim of the Central Trust Company of New York had been allowed for $723.327.30 on April 29, 1907. The amount thus allowed is the face of the promissory notes with unpaid interest to date of allowance.

Subsequently, and in March, 1910, Owsley, as ancillary executor, advertised for claims against the Yerkes estate in compliance with the statutes of New York; but the Central Trust Company never presented any claim to the ancillary executor. In July, 1910, Owsley, as original executor, paid a dividend on the claim as allowed in the probate court of Cook county, which payment was received by Central Trust Company. Toward the end of 1910 the collateral pledged with or for the benefit of the notes held by the Central Trust Company was sold in whole or in part, but in such wise that money was realized more than sufficient to pay the notes in question with all accrued interest thereon. Said notes bore interest at a rate higher than 5 per cent. and all the promissory paper contained ample authority to the lawful holder and owner of the notes and collateral to sell and discharge both principal and interest of the notes out of the proceeds of such sale. Central Trust Company, being thus in funds to pay all the Yerkes notes, computed the amount due without any reference to the proceedings in the probate court of Cook county, other than to give due credit for the dividend paid by Owsley as domiciliary executor, and on January 30, 1911, paid over to Owsley as ancillary executor the balance due on its computation, which money Owsley accepted without prejudice to the present suit.

It is provided by Illinois Rev. Stat. 1909, c. 74, §§ 3, 4, that "judgments recovered before any court or magistrate shall draw interest at the rate of five per centum per annum from the date of the same until satisfied." This statute is at the basis of the present action brought by Owsley, as ancillary executor, against the trust company to recover the difference between interest at 5 per cent. per annum, computed from the date of allowance in the probate court of Cook county, and the rate of interest contracted for in the notes aforesaid. It appeared that such excess of interest amounted to $44,402.10, for which sum Owsley asked judgment together with interest from January 30, 1911.

These facts being proved, both plaintiff and defendant moved for the direction of a verdict, and thereupon the matter was argued by:

W. O. Underwood, for plaintiff.
A. H. Van Brunt, for defendant.

HOUGH, District Judge (after stating the facts as above). The parties agree that the sole question raised in this case is whether the proceedings in the probate court of Cook county amount to a judgment merging the notes held by Central Trust Company, and fixing thereafter the rights of the parties, in accordance with the law under which the probate court acted.

If the allowance of the trust company's claim constituted a judgment, rendered by a court of competent jurisdiction, if such judgment was not merely in rem, and against a res consisting of Yerkes' personal property in Illinois, but ran in personam against the present plaintiff as executor, it cannot be denied that, after the rendition of such a judgment, the rights of parties and privies thereto must depend upon it.

[1] It would follow that whereas the trust company had before judgment a right to enforce certain notes against certain collateral, after judgment such right became one to enforce the judgment against the same collateral; and if the lawmaking power, that authorized the judgment, affixed thereto an interest rate lower than had been stipulated for between the parties, nevertheless after judgment the legal and not the contractual rate must be enforced. Taylor v. Wing, 84 N. Y. 472. The jurisdiction of the probate court is not questioned, and it is agreed that the trust company was entitled to file and submit its claim, and the court had power to allow it. The effect of allowance only is in question.

Nevertheless it is instructive to observe not only what was done under the law of Illinois, but what that law authorized to be done, in the probate court.

If instead of appearing and allowing the claim, Mr. Owsley had wished to contest it, the parties might have gone on to a regular jury trial, differing in no respect from an ordinary action at law against an executor. Ill. Rev. Stat. c. 3, § 60. The result of such a trial would have been the allowance or disallowance of claimant's demand, in the same form as here recorded by consent—from which decision an appeal would have lain to higher courts. Chapter 3, § 68.

The judicial expression of decision, after such proceedings in a duly constituted court, would, on principle, seem to be a judgment, and plaintiff's first reliance is on decisions of Illinois holding as much. Mitchell v. Mayo, 16 Ill. 83, holds fully that the presentation of a note to a probate court and its allowance against an administrator extinguishes the note, including the rate of interest agreed on. The court said:

"It is true no execution could be issued upon the judgment, but in this respect it is like a judgment of the circuit court against an administrator. * * * The effect of the order, adjudication, or judgment is precisely the same in the one case as in the other."

This means that it has been law in Illinois from an early day that a claim allowed in a probate court stands on the same footing and is entitled to the same respect as a judgment against the personal representative (for a debt of decedent) obtained in a court of general or superior jurisdiction after usual proceedings. Both are judgments, neither is capable of enforcement except to be paid in due course of administration, unless the executor or administrator is guilty of a devastavit.

[2] Such judgment is final against the representative so far as personalty is concerned, but is merely prima facie evidence of debt as against realty. The reasons for which distinction are laid down in Noe v. Montray, 170 Ill. 174, 48 N. E. 709. The doctrine has been recently redeclared in Ford v. First National Bank, 201 Ill. 128, 66 N. E. 316.

The trial of what are really suits against personal representatives, in court of probate, whether known by that name, or as orphans', or surrogates' courts, is foreign to the practice in many states, including New York; but there is nothing strange about it if a wider view be taken.

In Vermont, the probate court appoints commissioners to hear and determine claims against estates, and the action of such commissioners in allowing a note is "equivalent to a judgment and merges the original claim." Warner v. Bronson, 81 Vt. 134, 69 Atl. 660, citing Lowry v. Stevens, 6 Vt. 113.

Claims so allowed are "treated as judgments, except that they cannot be enforced by the final process of execution." Rix v. Nevins, 26 Vt. 388.

Minnesota has substantially the same practice, and the disallowance of a claim duly presented to a probate court in that state has been given the full force of a judgment not only in that state, but in Wisconsin. Sanborn v. Perry, 86 Wis. 364, 56 N. W. 337, citing the Minnesota cases.

Missouri holds that the allowance of a claim in a probate court is a "judgment having all the force and conclusiveness of a judgment of a court of general jurisdiction". Clark v. Bettelheim, 144 Mo. 270, 46 S. W. 135.

The law of Michigan is substantially similar. See the cases cited in Hess v. Reynolds, 113 U. S. 75, 5 Sup. Ct. 377, 28 L. Ed. 927.

Doubtless the list might be extended, but enough has been said to show that what was done by the probate court of Cook county resulted in a judgment of some sort, which in Illinois at all events Mr. Owsley could have paid at any time with interest at 5 per cent. only, and it further appears that in Sanborn v. Perry, supra, such a judgment was given extraterritorial effect, and treated as a judgment entitled to full faith and credit under the Constitution.

Even, however, if the allowance be a judgment, it is urged that being a probate proceeding it is in rem only, and affected nothing more than the Illinois estate of which the collateral held by the trust company in other states is not a part.

It has often been said and held that probate proceedings are in rem;

but there is no necessary relation between probate proceedings and proceedings in probate courts. It is competent for the Legislature to call a court by any name, or to assign to a court duties inappropriate to the name it bears. The Legislature of Illinois has imposed on its probate courts the duty of trying causes in which executors and administrators are defendants, and alleged creditors of their decedents are plaintiffs; names make no difference, and a consent judgment unimpeached is as good as another, so that this matter is to be viewed as though the trust company had obtained against Mr. Owsley as executor a judgment in a court, either state or national, of plenary jurisdiction, and sitting in Illinois.

That such a judgment is in rem is not held by any decision brought to my attention. But it is said not to be in personam because no personal liability is created thereby unless a devastavit occurs.

On principle there seems to me to be in this a confusion of ideas. Mr. Owsley, as executor, is one person; individually he is another, and no reason is seen why a judgment against the executor-entity is not a personal judgment; it is personal against the executor-person.

As has been pointed out in the cases cited above, the absence of power to issue execution is not destructive; it is no more than a detail of remedy. Some states prefer to leave satisfaction of judgments against executors to direct order of the court. New York grants execution by leave of court. Code Civ. Proc. §§ 1825, 1826. Judgments adjudicate rights—a stay law may leave the right unenforceable, but it does not change the judgment into something else.

Authority, however, is not lacking for the doctrine that a judgment against a personal representative is in personam.

Johnson v. Powers, 139 U. S. 156, 11 Sup. Ct. 525, 35 L. Ed. 112, rested upon an allowance of claim under the Michigan procedure above alluded to, and asserted the doctrine that such allowance, being a judgment, was in rem against decedent's estate wherever found; but the court said:

"This argument assumes that the judgment is in rem, and not in personam, or that the estate has a sort of corporate entity and unity. *But this is not true, either in fact or in legal construction. The judgment is against the person of the administrator, that he shall pay the debt of the intestate out of the funds committed to his care.*"

To the same effect is Hess v. Reynolds, supra, 113 U. S. at page 76, 5 Sup. Ct. at page 378 (28 L. Ed. 927), where it is pointed out that an estate cannot be personified; it can neither sue nor be sued; there must be a person, e. g., an executor, to fulfill such duties. It must follow, from the necessity for a person to be sued, that the judgment is personal. If a statute ever permits an attachment of decedent's property, or creates therein a jus in re enforceable on the principles of maritime law, a judgment in rem will appear; but it will be good only against the property seized, and will not be enforceable against any other. Tested in this way, the nature of the trust company's judgment is seen, for it was admittedly just as good against everything Mr. Owsley officially got after April 29, 1907, as it was against goods

then on hand. A judgment in rem, good against subsequently acquired res, has I think never been heard of.

But it is suggested that the view above taken of judgments in rem is too narrow, and that what is meant by that phrase is sometimes no more than an adjudication of status; wherefore in this sense some judgments of divorce, orders of naturalization, etc., are, if not strictly in rem, at least quasi in rem, and therefore not to be treated as personal judgments.

There is truth in this, but it is equally true that each judgment is to be examined to ascertain what it means; and the judgment now before the court means that Owsley in his official capacity owes a certain amount of money to Central Trust Company. This is the fact judicially established, it is exactly what every money judgment means, and in that sense every such judgment adjudicates status.

Nothing will sustain defendant's position here, except a holding that every judgment de bonis testatoris is in rem, for which no authority is adduced, and which seems to me repugnant to principle, for by the same reasoning every judgment against one in official capacity (receivers, guardians, etc.) is likewise in rem.

There is some language in Wilson v. Hartford Fire Ins. Co., 164 Fed. 817, 90 C. C. A. 593, 19 L. R. A. (N. S.) 553, and Michigan Trust Co. v. Ferry, 175 Fed. 667, 99 C. C. A. 221, on which defendant relies. I do not think it necessary to decision in either case, and certainly Judge Sanborn's disapproval of such cases as Sanborn v. Perry, supra, is overborne by the decision in Tilt v. Kelsey, infra.

It is an interesting, but not necessary theme, that even if the Illinois proceeding was in rem, it might fully bind everywhere and always the parties to it. Bailey v. Sundberg, 49 Fed. 583, 1 C. C. A. 387.

[3] It is next suggested that, whatever may be the effect of this judgment as between the trust company and Mr. Owsley as domiciliary executor, it is not the same when the latter as ancillary executor sues in New York. Judgments are available by and against parties and privies; executors under the same will, but appointed for different jurisdictions, are privies (Hill v. Tucker, 13 How. 458, 14 L. Ed. 223), and a fortiori is an ancillary executor privy to a judgment in which he as domiciliary executor is so directly concerned as in this case. See, also, Carpenter v. Strange, 141 U. S. 105, 11 Sup. Ct. 960, 35 L. Ed. 640.

[4-6] The necessary privity, if not identity, existing between Owsley as domiciliary, and the same man as ancillary executor, is seen by considering the nature of the latter office under the laws of New York (Code Civ. Proc. §§ 2700–2702), and also by the undoubted proposition that the executor named in the will took title to all the testator's personalty wherever situated, so that voluntary payments made to him by nonresident debtors are good acquittance (Parsons v. Lyman, 20 N. Y. 103), and an assignment by him enables his assignee to sue anywhere (Petersen v. Chemical Bank, 32 N. Y. 21, 88 Am. Dec. 298).

There seems to me another, and quite conclusive, method of reaching the result now evident.

[7] The trust company had, by pledge, control of property not within reach of any Illinois court, nor obtainable by Mr. Owsley in any capacity otherwise than by paying the debt and interest contracted for.

A court, having power to administer a fund, has (usually) inherent authority to exclude the whole world from that fund unless claims are made within a time limited.

The probate court could and would have excluded the trust company from all share in funds within its jurisdiction had claim not been made, and thereafter Mr. Owsley, as domiciliary executor, would have been quit of any claim at the hands of the trust company. Such · is the plain holding of Tilt v. Kelsey, and Sanborn v. Perry, supra.

The trust company wished to reach the Illinois funds as well as its own collateral, and so voluntarily took what is a judgment in Illinois. No suitor can invoke half a jurisdiction; he must take all, or none. The plaintiff, in Taylor v. Wing, supra, would probably have preferred to foreclose without judgment. This defendant would doubtless have preferred to stay away from Illinois, if the collateral had been deemed safe in 1907. But both found judgments advisable, and both must take the kind of judgment the law provides.

[8] Considering the allowance of defendant's claim in the probate court as a judgment inter partes, it is not I think denied that full faith and credit can be given thereto only by ascertaining what effect such judgment has "by law and usage in the courts of the state" of Illinois (Tilt v. Kelsey, 207 U. S. 57, 28 Sup. Ct. 6, 52 L. Ed. 95); and the general subject has recently been fully re-examined in Converse v. Hamilton (U. S. Sup. Ct. April 1, 1912) 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. ——.

What would be done with this matter in Illinois is not doubtful; wherefore verdict as prayed for is directed for plaintiff.