## ASSOCIATED INDUSTRIAL INS. CO. v. ELLIS et al.

(District Court, N. D. Texas, Wichita Falls Division. November 30, 1926.)

### No. 376.

1. Courts ⚖⇒260—Federal court has jurisdiction of suit to review decision of state administrative body, amount and residence existing.

Where a state statute provides for a hearing and decision by an administrative body, with right of review in a court, a federal court has jurisdiction of a suit for such review when complainant is a nonresident of the state, the adverse parties are residents, and the requisite amount is involved.

2. Master and servant ⚖⇒361—Assistants hired by contract agent operating selling stations of oil refining company held not "employee" of company within Texas Workmen's Compensation Act (Vernon's Ann. Civ. St. Tex. 1925, art. 8309, § 1).

An oil refining company, whose plant was in Texas, maintained wholesale selling stations at different points in the state, conducted by agents under contracts providing that the agent should requisition, receive, sell, and collect for products of the company on a commission basis, and, inter alia, that he should have no authority to incur indebtedness or liability of the company, should furnish his own labor and distributing equipment, that such assistants as he might hire should be his employees, paid by him, entirely under his direction and control, and that he should be liable to the company for any loss or damage caused it by them. *Held*, that such assistants were not "employees" of the company within the meaning of Texas Workmen's Compensation Act Tex. § 1 (Vernon's Ann. Civ. St. 1925, art. 8309), and that the company was not liable under the act for injury or death, of such an assistant, caused while in performance of his duties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

3. Contracts ⚖⇒143—Good faith provision of parties may not be given different construction.

What parties have provided in good faith in a written contract may not be given an entirely different construction and meaning.

4. Insurance ⚖⇒435—Policy of employer's liability insurance is for protection only of employees of insured.

Insurer under a policy of employer's liability insurance contracts only to reimburse such employees of insured as are injured in the service, or to pay compensation for their death, and its liability cannot be extended by con-

struction to embrace others not within the terms of the contract.

In Equity. Suit by the Associated Industrial Insurance Company against Mrs. J. B. Ellis and others to set aside an award of the Texas State Industrial Board. Decree for complainant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, Tex., for plaintiff.

Dickson, Newton & Dickson, of Seymour, Tex., and Carrigan, Britain, Morgan & King, of Wichita Falls, Tex., for defendants.

ATWELL, District Judge. The plaintiff, a California corporation, complains of Mrs. J. B. Ellis, widow of J. B. Ellis, Mary E. Ellis, Gladys Ellis, and Jess Ellis, minors and children of the widow and of the deceased. It also joins Carrigan, Britain, Morgan & King, attorneys at law, who represent the widow and children. It represents that the Industrial Accident Board of Texas ordered it to pay to the defendants, widow and children, the sum of $13.29 per week for 360 weeks, and that a certain percentage of said sum was ordered paid to the attorneys mentioned.

[1] The defendants challenge the jurisdiction of the court in the following words: "The action stated herein is one that is peculiarly within the jurisdiction of the state courts, for the reason that it has been held that it is absolutely essential to the validity of the cause of action to bring it in the county where the injury occurred, and for the further reason that a law applicable to foreign corporations generally with reference to federal jurisdiction is not applicable to insurance companies doing business under the Workmen's Compensation Act of the state of Texas."

The ground of objection is not quite clear. The Texas statute (Vernon's Ann. Civ. St. 1925, arts. 8306–8309) prescribes a method of procedure before the Industrial Accident Board and for appeals from its awards and decisions. When the board makes a decision, if either party is dissatisfied, such party may, within 20 days, give notice that it does not consent to abide thereby, and bring suit "in some court of competent jurisdiction in the county where the injury occurred to set aside said final ruling and decision, and said board shall proceed no further toward the adjustment of such claim. * * * *" It is further provided that the trial in such court shall be de novo. It will be observed that, before a compensation claim becomes a case in court, or before the issues connected therewith become justiciable, the claim must first be submitted to the administrative body known as the board.

At argument counsel advised me that this question had been passed upon in Texas Pipe Line Co. v. Ware, by the Fifth circuit,[1] but were unable to tell me where the case could be found, and I have not, therefore, had the benefit of it. In the following cases suits grew out of decisions by state administrative bodies, created by state statutes, and the review of decisions by such bodies may be termed an appeal from such decision and the courts have held that where a diversity of citizenship existed, and where there was involved the requisite jurisdictional amount the national courts would take jurisdiction: Myers v. Chicago & Northwestern Railway Co., 118 Iowa, 312, 91 N. W. 1076; Kirby et al. v. Chicago & Northwestern Railway Co. (C. C.) 106 F. 551; In re Mississippi River Power Co. (D. C.) 241 F. 194; Chicago & Northwestern Railway Co. v. Whitton, 80 U. S. (13 Wall.) 270, 20 L. Ed. 571; Hess v. Reynolds, 113 U. S. 73, 5 S. Ct. 377, 28 L. Ed. 927; Clark v. Bever, 139 U. S. 96, 11 S. Ct. 468, 35 L. Ed. 88; Upshur County v. Rich, 135 U. S. 467, 10 S. Ct. 651, 34 L. Ed. 196; In re Silvies (D. C.) 199 F. 495.

It seems to me that there is no good reason to deny a nonresident the privilege of entering any tribunal that it may select. This is clearly a controversy between citizens of different states. The plea to the jurisdiction is overruled.

[2] The case is tried under the following agreed stipulation:

"It is stipulated and agreed between counsel for plaintiff and defendant in the above entitled and numbered cause that this case will be submitted to the court upon the following agreed statement of evidence, and that a jury will be waived in the trial of this cause:

"It is agreed: That the American Refining Company, Inc., is a corporation duly incorporated under and by virtue of the laws of the state of Delaware, with its principal office and place of business in Wichita Falls, Tex. That said corporation was doing business as such refining company during the entire year of 1926, and for more than a year prior to the time of the accident that brought about the death of J. B. Ellis. That said corporation had many persons in its employ, and was entitled to carry compensation insurance under the laws of the state of Texas in such cases made and provided, and that it did

[1] See 15 F.(2d) 171, by the Circuit Court of Appeal, Eighth Circuit.

carry a policy of insurance that covered its employees that were injured or killed in the course of their employment with said company, the company carrying such policy being the Associated Industries Insurance Corporation, a California corporation, having an office in the Prætorian Building, Dallas, Tex. That said policy was issued in favor of the American Refining Company, and that the Associated Industries Insurance Corporation had authority to do business in the state of Texas and to write such compensation insurance, and such policy covered the liability of said American Refining Company as a subscriber to and under said act.

"That on the 1st day of February, 1926, said American Refining Company, Inc., entered into a contract with J. C. Warren, of Burkburnett, Tex., a copy of which is attached hereto, marked Exhibit A for identification, and made a part of this agreement. That the American Refining Company is a refiner of and disposes of gasoline in part through wholesale stations. The manner in which it is done is as follows: Contracts identical with the one attached hereto are made with parties at various points over Texas. The American Refining Company erects tanks, houses, and physically equips same for the purpose of storing gasoline. It has such property at Burkburnett, Wichita county, Tex. It contracts with parties, such as J. C. Warren, whom it contracted with at Burkburnett, to act as provided in the contract hereto attached and marked Exhibit A. These parties (designated as agent in the contract) usually find it necessary to employ one or more men to assist them in carrying out the provisions of the contract. These parties furnish their own trucks and employ and discharge their assistants, fixing their pay, paying them, and defining their duties and directing their work. The contract in question speaks of the American Refining Company delivering gas f. o. b. Burkburnett. However, Warren and the American Refining Company subsequently had an agreement that, if Warren desired, the gasoline would be delivered to him at the refinery in Wichita Falls, in which event the gas was to be invoiced to Warren at one cent per gallon less than if delivered to him f. o. b. Burkburnett. Warren actually proceeded under his contract, but found it proper or necessary to employ J. B. Ellis. Warren employed Ellis, fixing his duties and pay. Warren paid him and directed his work. One of the things Warren directed him to do regularly was to come to Wichita Falls and secure gasoline. Other duties consisted in pumping gasoline

from the storage at Burkburnett into motor trucks and delivering the gasoline to such customers to whom Warren was able to make sales. While priming the pump (the pump as aforesaid, belonging to the American Refining Company) the gasoline ignited in some manner and burned Ellis. Shortly thereafter he died.

"That said J. C. Warren, in conducting his business, employed less than three men and was not a subscriber under the Workmen's Compensation Act of Texas. That the place of business in Burkburnett, used by Warren in storing gasoline until such time as he desired to deliver it to his customers, was known and operated as the wholesale station of the American Refining Company, Inc.

"In entering into the plant of the American Refining Company to receive the products with which his truck was to be loaded, the deceased, J. B. Ellis, entered at all times by a gate (which was in fact the only entrance to said plant) over which was displayed in large letters the following sign: 'Entrance. For Employees Only.' And on several occasions Ellis' wife had accompanied him, and would have to stop at the gate and wait outside until her husband, the deceased, would return. On these trips he received and receipted for the products received in his truck. The operation of a refinery such as the one operated by the American Refining Company involves danger from fire and explosion, and the entrance to the American Refining Company has above it the sign above mentioned. Guards are stationed at the gate to see that no one entered who has no business at the plant.

"That subsequent to the date of said contract J. C. Warren employed J. B. Ellis in the capacity of general laborer to assist him (Warren) in complying with said contract. That while J. B. Ellis was engaged in the performance of his duties under his contract with J. C. Warren, and while filling a tank wagon with gasoline taken from a ground tank at the aforementioned station, located in Burkburnett, Tex., and while using the pump for the purpose of extracting the gasoline from the ground tank to the wagon, and while J. B. Ellis was priming said pump the gasoline ignited in some manner and an explosion occurred. As a result thereof J. B. Ellis was severely burned. This accident and burning took place on June 16, 1926, from which injuries the said J. B. Ellis died on June 17, 1926.

"That the American Refining Company owns and operates, under contracts identical with the one hereto attached, many wholesale

stations of the same kind and character as the station at Burkburnett. The men with whom such contracts are made by the American Refining Company usually hire helpers, the same as J. C. Warren hired Ellis. These helpers, however, are never paid by the American Refining Company, and such company has nothing to do with the hiring or firing of such men, or with fixing their pay or directing their duties. That J. B. Ellis was employed by the said J. C. Warren on or about April 10, 1926, and that he worked up until the time of his death on, to wit, June 17, 1926, at the wages of $100 per month, which were paid by J. C. Warren, and it is agreed that the compensation, if any, as awarded by the court in this cause, shall be on the basis of that wage. That at the time of his employment the said J. B. Ellis was married, and at the time of his death he left surviving him his wife, Mrs. J. B. Ellis, and three small children, to wit, Mary Evelyn, a girl six years old; Gladys, a girl, four years old; and Jess, a boy, one year old—who are citizens of Wichita Falls, Tex.

"The amount involved in this controversy exceeds $3,000, exclusive of interest and costs. That claim for compensation under the provisions of the Workmen's Compensation Act of Texas has been duly presented to the Industrial Accident Board by the defendants herein, claiming that the said J. B. Ellis was employed by the American Refining Company, and was injured in the course of his employment, so as to entitle him to compensation under said act, as an employee of the American Refining Company. That a final ruling, decision, and award in said claim has been made by the Industrial Accident Board of the state of Texas, which ruling and award was in favor of defendants herein for the sum of $13.29 per week for a period of 360 weeks. That within 20 days thereafter the Associated Industries Insurance Corporation gave defendants and each of them notice of its dissatisfaction with said award and of its intention to appeal therefrom. That within 20 days of the giving of said notice this suit was filed in this honorable court. That the defendants and each of them are resident citizens of Wichita county, Tex., and were at the time of the filing of this suit, and have been at all times since. That the accident and injuries aforesaid and the death of the said J. B. Ellis all occurred in Wichita county, Tex.

This stipulation is entered into subject to the exception of the defendant herein, to the jurisdiction of this court. Witness our hands this 24th day of November, A. D. 1926."

## Exhibit A.

"American Refining Company, Inc., Commission Agreement.

"This memorandum of agreement, made and entered into this the 1st day of February, A. D. 1926, by and between the American Refining Company, Inc., a corporation duly incorporated under and by virtue of the laws of the state of Delaware, with its principal office and place of business in Wichita Falls, Wichita county, Tex., hereinafter styled company, and J. C. Warren, of Burkburnett, Wichita county, Tex., hereinafter styled, agent, witnesseth:

"Commission.—The company agrees to pay to the agent above named, and the latter agrees to accept as full compensation, for his services as said agent, and for all other expense incurred by him under this agreement, the following commissions on the commodities sold and delivered by said agent; said commissions are to apply only on actual deliveries made and invoiced during the month, or period, which the commission voucher is made to cover; said commissions to be remitted to the agent monthly: Gasoline, 2 cents per gallon; kerosene, 2 cents per gallon; lubricating oils and greases, 10 per cent. sales value; fuel oil, ———.

"Credits.—All credit sales are to be made subject to the approval of the company. Any credit sale made by the agent, which has not been authorized by the company in writing, shall be at the agent's risk. It is agreed and understood that, if at any time the agent should sell to any customer, or customers, an amount which is in excess of the credit amount authorized by the company, or does not make collection on terms of sale authorized by the company, then and in such event the agent may be held liable for the entire amount of the account due by such customer or customers. It is agreed and understood that the company is hereby authorized to withhold from the total of earned commissions each month, an amount equal to ten per cent. (10%) of the unpaid customer's account as of the 10th of the month following; this amount so withheld is to be added to the agent's earned commissions for the succeeding month, and the same procedure followed in succeeding months.

"Selling Price.—It is understood and agreed) that the agent shall sell commodities herein named only upon such terms and for such prices as may, from time to time, be specified to him by the company, and that the agent will sell only such commodities as may

be delivered to him by the company f. o. b. Burkburnett, Tex.

"Liability.—The company shall insure the stock kept on hand at the station hereinabove mentioned, but shall not be liable to either the agent or his assistants for any loss sustained by reason of any damage to said station and equipment, as the result of fire, explosion, storm, or otherwise.

"Duration.—It is understood and agreed that this contract shall remain in full force and effect for a term of one year with the option on the part of the company, at the expiration of said one-year term, of renewal from year to year.

"Bond.—It is understood and agreed that the agent herein named shall give bond in any approved surety company for $3,000 to be paid for by the company.

"Venue.—Any sums of money due under this contract shall be payable at Wichita Falls, Tex.

"Authority.—Said agent has no authority for and in behalf of the company to incur any indebtedness or liability other than hereinbefore specified, without the written consent of said company.

"Accounting.—The agent further agrees that he will, on the termination of this agreement, promptly surrender to the authorized agent of the company, possession of any property or properties that he may be possessed of that is the property of the company, including all records (made or used by him in the conduct of the business), in the same condition that they were in when he received the same, natural wear and tear excepted, and will also promptly account for, and deliver to the company, any and all of its commodities remaining in his hands, and for all moneys and accounts receivable belonging to or due the company. It is further understood and agreed that the company's representative or auditor shall have, at all times, access to the agent's books, records, and accounts used or kept in connection with his oil business hereinabove referred to, for the purpose of auditing and inspecting.

"Remittances.—Said agent is not, under any circumstances, allowed to retain any money or checks, etc., collected by him as agent for any purpose, but must deposit same as hereinafter set forth, and money due said agent will be paid monthly by check from' the office of the company at Wichita Falls, Tex.

"Collections.—All sales of commodities furnished to the agent by the company shall be made and invoiced in the name of the company, and the agent shall collect for the same

and promptly deposit, in original form, all moneys, checks, etc., to the credit and in the name of the company, at the bank designated by it.

"Equipment.—It is understood and agreed that the company is to furnish, free of charge, the necessary blank forms for proper conduct of the business. It is understood and agreed that the agent shall pay all other items of expense, including the hiring and furnishing of assistants, horses, wagons, trucks, or any such conveyance as may be necessary in receiving, hauling, selling, and delivering all commodities of the company supplied to or sold by the agent under this agreement, including all gasoline and oils used in connection therewith, unloading tanks, barrels, drums, cans, etc.: Provided, further, that such assistants as said agent may hire shall be the employees of, and entirely under the direction and control of, the agent, and the agent shall be liable to the company for all loss or damage occasioned by their acts; and provided, further, that the agent shall permit no assistant or other person, who is not of mature age and judgment, to fill, handle, ship, or deliver any refined oil or gasoline at or from the storeroom of said agent.

"Station Name.—The company shall have the right and privilege of repainting and otherwise improving the station and equipment now belonging to said agent, and to be used by him in the disposition of the company's products, with the company's standard colors, and the station to be known and advertised as the American Refining Company, Inc., Station.

"Commodities.—It is intended and agreed that the company is to furnish the agent such quantities of kerosene, gasoline, lubricating oils, and greases as he may request, market, and need, in the proper conduct of his business; said above-named products to be furnished the agent from time to time, f. o. b. railroad cars, Burkburnett, Tex., upon written request made by him to the company at Wichita Falls, Tex., it being expressly understood and agreed that the company shall not be liable to said agent for the failure to furnish said products above mentioned, on account of any unavoidable or unforeseen accident, cause, or contingency, or from any act of God or the public enemy, strike, walkout, lockout, or from any cause beyond the control of the company, or from the act of the government or any governmental authority, national, state, or municipal, or from the execution of any service of any court of competent jurisdiction.

"Cancellation.—It is expressly agreed and

understood by and between the parties hereto that, in the event of the failure of the agent herein named to comply with the terms and conditions of this contract, the company shall have the right to discharge said agent by giving him 10 days' notice; and it is further agreed and understood that, if for any cause said agent desires to leave the service of this company, he will make his wish known in writing and give them not less than 10 days in which to relieve him.

"Agent's Duties.—The agent herein covenants and agrees that he will, at all times during the life of this contract, diligently and faithfully perform, to the satisfaction of the company, all the duties incident and necessary to a proper and efficient conduct of the business as agent for the company, in the town of Burkburnett, Tex., and surrounding territory, as hereinabove. stipulated, and the agent hereby agrees to take due and proper care of and be responsible for all property of the company intrusted to his keeping.

"In witness whereof the parties have executed this agreement the day and year first above written. American Refining Company, Inc., by H. A. Allen, Company, J. C. Warren, Agent."

The defendants contend that upon the foregoing facts the case should be ruled by Maryland Casualty Co. v. Scruggs (Tex. Civ. App.) 277 S. W. 768, and Maryland Casualty Co. v. Kent (Tex. Civ. App.) 271 S. W. 929. They also cite United States Fidelity & Guaranty Co. v. Lowry (Tex. Civ. App.) 231 S. W. 818; Shannon v. Western Indemnity Co. (Tex. Com. App.) 257 S. W. 522.

Section 1, article 8309, of the Texas act provides: " 'Employer' shall mean any person, firm, partnership, association of persons or corporations, or other legal representatives that makes contracts of hire. 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

The widow and children may not recover of the plaintiff, unless they are the beneficiaries of an *employee* of the American Refining Company. That company stipulated in writing with Warren, who had employed the deceased, Ellis, that: "Provided, further, that such assistants as said agent may hire shall be the employees of, and entirely under the direction and control of the agent, and the agent shall be liable to the company for all loss or damage occasioned by their acts; and provided, further, that the agent shall permit no assistant or other person, who is not of mature age and judgment, to fill, handle, ship, or deliver any refined oil or gasoline at or from the storeroom of said agent."

In the agreed statement of facts it is set forth that "Warren employed Ellis, fixed his duties and pay. Warren paid him and directed his work." At another place in the statement it is agreed "that subsequent to the date of said contract Warren employed Ellis in the capacity of general laborer to assist him [Warren] in complying with said contract."

[3, 4] What the parties in good faith have provided in a written contract may not be given an entirely different construction and meaning. There is no basis for so torturing the plain language of the contract as to make it appear that Warren was given any authority, either express or implied, to hire a workman or an employee for the company. It was directly stipulated that he should not. It is only the *employees of that company* who are protected by the insurance that that company took with the plaintiff, and the plaintiff bound itself only, and solely, and alone, to reimburse such employees of that company as were injured. The case, therefore, is different from the Scruggs Case and the Kent Case. There are some other differences that it is unnecessary to mention.

It would unsettle the safety of contract charting to hold that an insuring company could become, or would become, liable for injuries to a person of whose connection it had, or could have had, no knowledge whatsoever. The plaintiff was entitled to look to the contracts that the American Refining Company had made, and to the pay roll of that company to determine who was in the employ of that company.

I find nothing in the case to support relief under the other section of the statute, which raises a liability if there be any fraud on the part of the employer, so as to shift responsibility. The whole purpose of the statute is good, and there is no reason to think in this case that the company would not gladly avail itself of the protection of the statute against possible injury to any person who might, by the remotest construction, be entitled to its benefits.

Likewise it would be shocking to hold that there can be any doubt about the right of the company, in the management of its affairs, and in the carrying on of its business, to withhold from its agents and employees the right to employ any other person for or on

account of it. The company not only has the power, but the righteous right, to contract with any person it pleases, and likewise the right to decline to contract with any person. I think that is what it did in its agreement with Warren. See Kronick v. McLean Co. (N. D.) 204 N. W. 839; Arterburn v. Redwood Co., 154 Minn. 338, 191 N. W. 925; Angel v. Industrial Commission of Utah, 64 Utah, 105, 228 P. 509; Moore & Gleason v. Taylor, 97 Okl. 193, 223 P. 611; Hogan v. State Industrial Commission, 86 Okl. 161, 207 P. 303.

A discussion of the intricacies of independent contracting, which, for solution, depends upon the facts of each case, is unnecessary. The status of each party here is fixed by unmistakable word.

A decree may be drawn for the plaintiff.