**Application of KOSCH, LEWIS & REUBEN.**
**Application of ROBBINS, FOWLER, WELLS & WALSER.**

**In re McKEVETT'S ESTATE.**
Nos. L-7545, 7546.

District Court, E. D. New York.

Nov. 29, 1937.

Katz & Sommerich, of New York City, and Elvin N. Edwards, of Mineola, L. I., N. Y., for Charles Arthur McKevett, appearing specially for the purpose of removing cause and for injunction.

Kosch, Lewis & Reuben, of New York City, and Robbins, Fowler, Wells & Walser, of Bay Shore, N. Y., opposed.

BYERS, District Judge.

These matters are of identical nature and scope and will be treated together; they are before the court in the form of a motion to enjoin certain proceedings now pending in the Surrogate's Court of the County of Suffolk, initiated by the above-named respective firms of attorneys under section 231-a of the Surrogate's Court Act of the State of New York, to determine the amounts of their fees.

The motion was argued on November 17, 1937, upon which day the papers on removal had not been filed in this court; for the purposes of the orders to show cause constituting the bases of the applications for injunction, a copy of the Surrogate's Court record was ordered to be filed in this court, authenticated by one of the attorneys making the motion, and that has been consulted as though it were the original record on removal.

The injunction is sought upon the theory that a hearing which had been set for November 23rd in the said Surrogate's Court should not be permitted to proceed because of the removal of the proceedings to this court.

The opposition to the motion is in effect an application to remand and has been so considered.

The proceedings originated in similar petitions filed in the state court by the respective attorneys in which their retention as attorneys for Charles Arthur McKevett is set forth.

As to the first-named firm it is therein shown that they were retained by him to procure the issuance to him of letters of administration upon the estate of his deceased father, Bert McKevett, who died on April 22, 1937, in Florida, although apparently a resident of Suffolk County, in the State of New York. Those attorneys, with their client's approval, in turn engaged the second-named firm in connection with the said application on or about May 12, 1937, to act as counsel with respect of all matters likely to arise in the said administration, including that of the decedent's domicile.

The employment thus established continued until about September 18, 1937, as of which date the said Charles Arthur McKevett dismissed the first-named firm as the result of having compromised and settled certain potential assaults upon his status as administrator, based upon the assertion that the decedent was survived by a widow who had contracted a common law marriage with the decedent.

The importance of that anticipated controversy lay in its capacity to eventuate in a determination that the widow was legally entitled to a distributive share in the estate and to letters of administration. On September 29, 1937, letters of co-administration were issued to her by the said Surrogate's Court upon an application of the said Charles Arthur McKevett, reciting that she was the widow of the decedent; apparently she has qualified as such co-administratrix.

The two administrators are now represented by the lawyers who originally appeared only for the widow.

During the interval embraced between the issuance of the first and last letters above referred to, the principal activities of the several petitioners, as such attorneys, had to do with questions involving the actual legal status of the alleged widow, the exact relationship borne to the decedent by the administrator first appointed, and his legal capacity to serve as administrator by reason of certain incidents connected with his earlier years.

These petitions resulted in the issuance of citations out of the said Surrogate's Court, addressed to the said administrator

and the co-administratrix, directing them to show cause why the fees and disbursements of the said petitioners should not be fixed and determined and the lien be adjudicated by the said court, pursuant to the prayers of the said petitioners. It seems that the estate involved is of substantial proportions.

The removal is predicated upon the theory that there is a separable controversy as to which jurisdiction pertains to this court, involving so much of the relief sought by the petitioners as has to do with the liability of the said Charles Arthur McKevett, in his personal capacity, to pay for the professional services so said to have been rendered, because he is a resident of the State of Connecticut.

This court is required to decide whether there is such a separable controversy revealed in the pleadings constituting the record under examination.

Speaking generally, the mere fact that the question presented arises in connection with a decedent's estate pending administration in a Surrogate's Court, does not relieve this court of its duty to adjudicate the controversy if there is the necessary diversity of citizenship, and one of the parties is in a position to invoke Federal jurisdiction. Hess v. Reynolds, 113 U.S. 73, 5 S.Ct. 377, 28 L.Ed. 927.

That case involved the question of. the legality of a claim asserted against the decedent, and whether it must necessarily be determined by the probate court conducting the administration. The following cases may be consulted with profit to ascertain the attitude of the national courts concerning appropriate issues to be determined therein, arising out of controversies involving the administration in the state courts of decedents' estates: Byers v. McAuley, 149 U.S. 608, 620, 13 S.Ct. 906, 37 L.Ed. 867; Re Cilley (C.C.) 58 F. 977; Walker v. Brown (C.C.A.) 63 F. 204; Re Foley (C.C.) 80 F. 949, 951; Stevens v. Smith (C.C.A.) 126 F. 706, 709; American Baptist Home Mission Society v. Stewart (C.C.) 192 F. 976.

These claims are not asserted as debts of the decedent, but are for legal services rendered to an administrator; the petitions disclose the necessary consideration of, and preparations to meet, many legal issues, which have been herein indicated in part. A contemplated adjudication, for instance, that the administrator was the son of the decedent, or that in fact and in law the person assailing his appointment was not his widow; or that the administrator was personally qualified to act at the time of his appointment by the Surrogate's Court of Suffolk County, would have been controlling upon the course of administration, and the ·measure and extent of the administrator's ultimate liability to the person or persons entitled to inherit, for the correct administration of the assets coming into his hands.

The circumstance that the original administrator was at one time believed by himself to be the only distributee (although apparently as the result of negotiation that condition may have been changed) does not serve to create a separable controversy which may properly be the subject of removal to this court, in the opinion presently held.

Deference to the views expressed in Matter of Matheson Estate, 265 N.Y. 81, 191 N.E. 842, does not point to a different conclusion. The fact that the administrator was and is personally liable to the attorneys for the reasonable value of their services does not change the nature of the services themselves; nor do certain of the allegations in the petitions, upon which those seeking the injunction now rely; namely (as to the first petition) that the attorneys were employed to represent Charles Arthur McKevett generally "as well as in connection with his personal interests" in said estate, whether as distributee or otherwise, and that extensive services have been rendered to him "both individually and in his capacity as administrator," for the reason that the services as particularized in both petitions were appropriate to the maintenance of the status of the administrator as such, unimpaired by the anticipated assaults upon him, and this is particularly true of the discovery proceedings, referred to in the second petition, under section 205 of the Surrogate's Court Act.

The matter will be clarified by considering Charles Arthur McKevett as a person entirely remote from the administrator. It is quite true that, if all the preparations of the administrator to oppose the assertion of the common law marriage had led to its disestablishment during the course of the administration proceedings, the result would have been financially favorable to the distributee; but that does not prove that such services were rendered to the latter, instead of to the administrator. Once he had qualified, it became his duty

to repel all assaults which might be made upon him in his representative capacity, and to use his utmost endeavors to realize the greatest possible amount for the benefit of such person or persons as should be entitled under the law to receive distribution of the estate.

The counsel fees, incurred by him in that behalf would be presented to the Surrogate upon the judicial settlement of his accounts and, if reasonable, would be allowed as a charge against the assets in the hands of the administrator; perhaps the Surrogate would weigh the benefits accruing to the distributee or distributees in considering the value of those legal services, which fails to demonstrate that there is a separable controversy involving in part the value of the services rendered to the administrator, and in part the benefit which they contributed to the person or persons entitled to inherit.

Stated otherwise, the legal services are not subject to allocation between the administrator and the person or persons to whom distribution is to be made; the property under administration is subject to a lien, depending for its dimensions upon the decree of the Surrogate of Suffolk County, and that result is not changed by the additional fact that the petitioners would have a claim against the administrator personally if the property being administered should prove to be insufficient to support the lien.

Once the extent of the lien has been fixed, the method of its liquidation becomes of no moment, in seeking to discern the presence of a so-called severable controversy.

There is nothing to indicate in the recital of the items of the several services, that any one or more could be assigned to the distributee as distinguished from the administrator.

A court which should undertake to resolve these indissoluble elements into two categories would be engaged in a hopeless undertaking.

The Surrogate Court decisions quoted in the brief in support of the injunction, to the effect that each step in a proceeding in the settlement of an estate is separate and distinct from every other, do not affect this conclusion. It is probably true that the proceedings initiated by the petitions referred to are to be regarded as constituting a separate step in the general administration of the goods, chattels and

credits of Bert McKevett, deceased, but that does not mean that a separable controversy is thereby created which this court should adjudicate. It is the inherent nature of that separate step which necessarily governs the decision of this application.

For the reason then that no separable controversy is shown to exist, it is thought that this cause does not belong in the federal court, and that it should be remanded to the Surrogate's Court of the County of Suffolk, for disposition, and it necessarily follows that the motion for an injunction will be denied.

The omission is deliberate of reference herein to the circumstances revealed at length in the numerous affidavits which have been filed since the argument of this motion, touching the process adopted in negotiating the settlement which resulted in the dismissal of the petitioners; the various affidavits somewhat illuminate the entire situation, but not the question for decision upon this application.

Motion for injunction denied. Cause remanded.

Settle order.